**INNOVATION DATA PROCESSING, INC., etc., Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, etc., Defendant.**

**Civ. A. No. 83–1452.**

United States District Court, D. New Jersey.

Oct. 25, 1984.

Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for plaintiff.

Edward A. Zunz, Jr., Riker, Danzig, Scherer & Hyland, Morristown, N.J., Robert F. Mullen, Cravath, Swaine & Moore, New York City, for defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This is an antitrust action which was brought by the plaintiff Innovation Data Processing, Inc. against International Business Machines Corp. (IBM) seeking to enjoin IBM from marketing a new piece of computer software called Installation Productivity Option "J" (IPO–J).

As I pointed out in my previous decision, which was rendered on March 12, 1984, Innovation alleged that IPO"J" constituted a tie-in with an IBM software product known as Data Facilities Data Set Services (DFDSS). On the aforementioned date, I held that plaintiff had failed to demonstrate the existence of a per se unlawful tie-in arrangement, but found that the plaintiff was still entitled to proceed under its claim that defendant IBM's practices violated the general standards of the Sherman and Clayton Acts. *See Innovation Data Processing v. International Business Machines*, 585 F.Supp. 1470 (D.C.N.J. 1984).

IBM now brings this motion for reconsideration of its motion for summary judgment upon the issue of whether Innovation may proceed under its alternative general standards claim. In the alternative IBM, has moved for certification of this issue to the Court of Appeals for the Third Circuit pursuant to 28 U.S.C. Section 1292(b).

Rule 12(I) of the Rules of the United States District Court for the District of New Jersey provides for reconsideration only when counsel has presented new factual matters or controlling decisions which the Court has overlooked.

IBM contends that under this Court's previous holding that IBM did not tie the DFDSS to the IPO"J" system, there is no anti-competitive conduct that remains to be tested under the "rule of reason" standard. In support of its motion, IBM cites a number of cases which support its contention that the failure to establish a tie-in must cause Innovation's claims to fail under a rule of reason theory. Without the key element of a tie-in, the extent of any effect on competition and the reasonableness of any restraint of trade are irrelevant. *See, Electroglas, Inc. v. Dynatex Corp.*, 497 F.Supp. 97, 106 (N.D.Cal.1980).

In a case decided by the United States Supreme Court only a few weeks after my previous decision, the Court dealt with the problem of tie-ins in connection with a contract that had been signed by a hospital in Louisiana with a group of anesthesiologists. I have read that decision and it is my determination that my denial of summary judgment as to plaintiff's "general standards" claim should be reconsidered. *See Jefferson Parish Hospital v. Hyde*, —— U.S. ——, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) which is to the best of my knowledge, the Court's most recent pronouncement of the state of tying arrangements in antitrust law. I believe that the rationale employed by the Court requires that I reanalyze plaintiff's alternative theory.

A threshold question which must be resolved is whether by March 12 opinion held only that no *per se* tie-in had been established as a matter of law, or whether it held there was simply no tie-in. A finding of no *per se* tie-in is a conclusion of law predicated upon a finding that three distinct elements exist. The three distinct elements that must be found are:

1. the conduct in question must be a tie-in;

2. the seller must have "sufficient economic power with respect to the tying product to appreciably restrain free competition in the market of the tied product," and

3. a "not insubstantial" amount of interstate commerce must be affected.

See *Northern Pacific Railway v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), and *Ungar v. Dunkin' Donuts*, 531 F.2d 1211, 1223–24 (3d Cir.1976), *cert. denied* 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1977).

As *Jefferson Hospital* pointed out, "A *per se* rule focuses on the probability of anti-competitive consequences," because "the character of the restraint produced by such an arrangement is considered a sufficient basis for presuming unreasonableness without the necessity of any analysis of the market context in which the arrangement may be found." *Jefferson Hospital,* —— U.S. at ——, 104 S.Ct. at 1556. *"Per se* condemnation—condemnation without inquiry into actual market conditions—is only appropriate if the existence of forcing is probable." *Id.* at ——, 104 S.Ct. at 1560.

■ Where a *per se* claim fails, plaintiff does not necessarily fail altogether in his claim. He simply loses the benefit of the presumption of harm provided by the *per se* rule and must show the actual effect of the alleged anti-competitive practice on the market. *See Fortner Enterprises v. U.S. Steel, (I),* 394 U.S. 495, 500, 89 S.Ct. 1252, 1257, 22 L.Ed.2d 495 (1968); and *Jefferson Hospital* at ——, 104 S.Ct. at 1568.

■ The standard guiding an inquiry into the purposes and effects of the practices involved in order to establish whether the standards of the Sherman Act have been violated, is known as the "rule of reason." *See U.S. Steel Corp. v. Fortner Enterprises, (II),* 429 U.S. 610, 612, Footnote 1, 97 S.Ct. 861, 863, Footnote 1, 51 L.Ed.2d 80 (1977).

Crucial to whether a *per se* or "rule of reason" inquiry is made, however, is a preliminary showing of some practice or behavior by the defendant that could provide the basis for some anticompetitive effect.

The practice alleged by the plaintiff here is that defendant tied the sale of one product to the sale of another. No other behavior is pleaded or can even be inferred from either the briefs or affidavits in this matter. Thus, before plaintiff may proceed on a *per se* analysis, or a "rule of reason" analysis, there must first be a finding that a tie-in is present. Thus, I now turn to my March 12 opinion to determine whether my finding that no *per se* illegal tie-in existed was predicated upon a finding that no tie-in existed in the first place.

In my analysis of the *per se* tie-in at issue, I proceeded under the three-prong analysis of *Northern Pacific Railway* described *supra*. (*See also Innovation v. IBM*, at 1475. The first element I examined was, of course, whether a tie-in existed. I found that, "IBM customers are for the purposes of the Sherman and Clayton Acts free to take either the DFDSS program or the IPO"J" by itself and that on this basis alone there is no illegal tying arrangement." *See Innovation v. IBM* at 1475.

The opinion went on, however, to describe three uncontradicted facts that confirmed this conclusion. "First, any IBM customer is free to license the DFDSS program at any time by itself. Second, any IBM customer can order IPO"J" in a segmented version which does not include the DFDSS program. And, third, any IBM customer who orders the DFDSS program, whether by itself or together with either a segmented or integrated version of IPO"J", is free to cancel the license for the program at any time, paying the license fee only for the period of usage." *Id.*

On page 1476 I stated: "It is clear that IBM's actual conduct here cannot constitute an unlawful tying arrangement." At no point in my decision did I reach the issues raised by the second and third elements of a *per se* claim—the economic power of the defendant and the amount of interstate commerce affected.

■ Thus, my finding of no *per se* tying claim was predicated on the first element

of the analysis—the existence of a tie-in itself. The *Jefferson Hospital* opinion in its analysis of the relevant markets to be considered in the economic effects analysis of a tie-in assumes that a finding of a tie-in has already been made before any inquiry into the adverse economic effects can proceed. For example, on page ——, 104 S.Ct. at 1561 of that opinion the Court said: "any inquiry into the validity of a tying arrangement must focus on the market or markets in which the two products are sold ..." and Justice O'Connor's concurrence stated: "the Court has never been willing to say of tying arrangements, as it has of price fixing, division of markets and other agreements subject to *per se* analysis, that they are always illegal, without proof of market power or anticompetitive effect." Although, as plaintiff points out, Justice O'Connor states in footnote 2, page ——, 104 S.Ct. at page 1570 n. 2, that "arrangements largely indistinguishable from tie-ins are generally analyzed under the rule of reason," the assumption is that some practice has been found to exist that could allegedly be anticompetitive. As there has been no tie-in between IPO"J" and DFDSS, there is no practice to analyze even under a rule of reason.

The *Jefferson Hospital* rationale implicitly affirms the holding in *Electroglas, supra,* where the Court stated at page 106: "Plaintiffs correctly maintain that summary judgment against them on *per se* tying claims does not necessarily invalidate their tying claims under a rule of reason theory.... However, the failure to establish the existence of a tie-in must cause the tying claims to fail under either theory. Without this key element, the extent of any effect on competition and reasonableness of any restraint are irrelevant."

In finding the basis for plaintiff's claim under a rule of reason to be nonexistent, I am mindful of the Supreme Court's cautioning that summary judgment procedures should be used sparingly in complex antitrust litigation. I mentioned this on March 12 citing then, and now, to *Poller v. Columbia Broadcasting System, Incorporated,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). There are, however, circumstances which authorize summary disposition as where plaintiff fails in an antitrust action to show sufficient facts to raise genuine issues for trial. *See First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1967), *see also Electroglas, supra.* For the aforementioned reasons, I accordingly grant defendant IBM's motion for summary judgment and deny plaintiff Innovation's claim under a "rule of reason" theory. Because of this finding there is no need to reach the § 1292 certification issue raised in defendant's motion.