NICOLA COSTAGLIOLA AND MARY COSTAGLIOLA, HIS WIFE, PLAINTIFFS, v. LAWYERS TITLE INSURANCE CORP., A CORPORATION OF THE STATE OF VIRGINIA AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND EARL SMITH AND BETTY SMITH, HIS WIFE, DEFENDANTS.

LAWYERS TITLE INSURANCE CORP., DEFENDANT–THIRD PARTY PLAINTIFF, v. KEE ENGINEERING, INC., AND ROBERT T. KEE, JR., THIRD PARTY DEFENDANTS.

EARL SMITH AND BETTY SMITH, DEFENDANTS–THIRD PARTY PLAINTIFFS, v. NEW JERSEY REALTY TITLE INSURANCE COMPANY, THIRD PARTY DEFENDANT.

Superior Court of New Jersey
Chancery Division Monmouth County

Decided December 20, 1988.

*Jerry J. Massell* for third-party plaintiffs, Smith (*Massell, Massell & Vincent,* attorneys).

*Robert E. Burns* for third-party defendant, New Jersey Realty Title Insurance Company.

McGANN, J.S.C.

This matter arose out of a boundary line dispute. What is left for resolution is the claim of the defendants-third party plaintiffs, Smith, against the third party defendant, New Jersey Realty Title Insurance Company. The background facts are the following.

By deed dated January 25, 1973, the defendants-third party plaintiffs, Smiths, acquired title to property known as Block 30, Lot 5 in Millstone Township. Their title was insured by third party defendant, New Jersey Realty Title Insurance Company under its policy in the amount of $6,500, dated January 29, 1973. The pertinent language of the policy [1] provides that New Jersey Realty "covenants that it will indemnify, keep harmless and insure" (the Smiths) "from all loss or damage not exceeding the amount of this policy which" (the Smiths) "shall sustain by reason of defects in or unmarketability of the title of" (Smiths) "to the estate or interest" (in the described property) "or because of liens or other incumbrances charging the same .... excepting the estates, defects, objections, liens and incumbrances stated in Schedule B hereof, the validity or sufficiency

---

[1] The insurance contract is clearly one of "adhesion."

of which is not covered by this contract. The obligation and liability of the Company hereunder shall be limited to and established in the manner provided by, and the amount of loss and damage sustained by" (the Smiths) "shall be in accordance with the scope and conditions of this policy .... which are annexed to, incorporated in and made part of this contract and not otherwise."

The listed Schedule B exceptions do not affect the issue before the court.

Under Scope and Conditions of the Policy, the following are pertinent:

1. New Jersey Realty Title Insurance Company will, at its own cost, defend the party insured in all actions of ejectment or other proceedings founded upon a claim of title or incumbrance prior in date to this policy of title insurance and hereby insured against.

8. Within five days after receipt by the party insured of notice or knowledge of any matter injuriously affecting or which may injuriously affect the title insured by this policy, the party insured shall notify the Company thereof in writing, and within five days after receipt of service of every notice, process or pleading affecting said title, shall deliver the same to the Company. Upon request, the party insured shall secure to the Company the right to defend any action or suit brought, or to prosecute any action or suit affecting said title it may desire, including the opportunity and right for review by the highest appellate court, give it all reasonable aid and permit it to use the name of the part insured. In default of the performance of any of the requirements hereby made or if without the Company's written consent any suit or legal proceeding shall be commenced by any person interested in this policy, the result of which suit or proceedings may cause any liability to the Company hereunder, the Company may declare this policy void.

9. In every case where the liability of the Company to pay loss or damage has been definitely fixed in accordance with these conditions, the Company shall, within thirty days after written notice to it of the loss or damage and proof of loss, pay at its option (a) the loss or damage or (b) the amount of this policy subject to the following provisions: (I) whenever there shall appear to be an outstanding estate, interest or lien in or on any portion or all of the premises insured which might be acquired by the party insured either by agreement or by the exercise of any power, privilege, franchise or authority vested in said party insured, the party insured shall upon request by the Company acquire such estate, interest or lien, provided the same shall not cost more than the amount of this policy, in the negotiations or proceedings to acquire which the Company may, if it so elected, represent the party insured, or the party insured may upon request to the company

proceed with the acquirement of any estate, interest or lien in or upon said premises, or any part thereof as above provided for, the Company shall be obligated for the actual cost of all proceedings taken in addition to its obligation under the other provisions of this policy; and (II) whenever, in the opinion of the Company, the loss or damage shall approximate or exceed the value of the estate or interest insured, the Company may demand a valuation of the insured estate or interest, less estates and incumbrances not hereby insured, to be made by three disinterested arbitrators or any two of them, one to be chosen by the party insured, the other by the Company, and they two choosing the third; no right of action shall thereupon accrue until thirty days after written notice of said valuation shall have been served upon the Company accompanied by a tender of conveyance of such appraised estate or interest to the Company, or its nominee, at its option, at such valuaton, and unless within said time the Company shall neither pay said loss or damage, the amount of the policy, nor accept said tender; acceptance of such conveyance and payment of such consideration fixed as aforesaid shall discharge all obligations of the Company under this policy.

In 1981 the adjoining property, Block 30, Lot 6, was purchased by the plaintiffs in this action, the Costagliolas. Their title was insured by Lawyers Title Insurance Company. In 1987 the Costagliolas obtained approval for and began constructing a small shopping center based on a survey and site plan prepared by Robert Kee, Jr. of Kee Engineering, Inc. The Smiths objected to some of the construction because they believed it intruded onto their land.

By letter dated February 11, 1987, the Costagliolas asserted a claim against the Smiths stating that the Smiths encroached on Lot 6 by building a fence and well thereon. The Smiths refused the request to remove those structures on the belief that their understanding of the boundary line was correct.

The Costagliolas filed a Complaint against their title company (Lawyers Title) and the Smiths on May 13, 1987. Against the Smiths they sought a declaration that the Smiths had no claim to the disputed boundary area. The Smiths, through private counsel, Answered and Counterclaimed for damages based on trespass.

On December 22, 1987, pursuant to *N.J.S.A.* 2A:28–1 et seq., the Court appointed a Boundary Line Commission to resolve the proper location of the disputed line. During the pendency of

the action, the Smiths agreed, without prejudice to their position, to allow the Costagliolas at their own expense to remove the fence and well. For the purpose of strengthening their position the Smiths had a new survey of their property made by Lord, Anderson, Worrell and Barnett (The Lord survey) dated February 8, 1987. They then relied on that survey and the testimony of another surveyor, Yorkanis, before the Commission. Costagliola relied on the survey of Kee Engineering, Inc. dated June 11, 1979, and the testimony of Robert T. Kee, Jr., its principal. The latter two had been joined as third-party defendants by Lawyers Title. In its report of June 17, 1988, the Commission ruled that the Lord survey was correct as to the true boundary.

Based on that, Lawyers Title has settled with the Costagliolas and with Kee.[2] What remains in the action is the third party claim by the Smiths against their title company, New Jersey Realty, for reimbursement of their counsel fees and surveying costs necessary to vindicate their title.

The Smiths claim against New Jersey Realty was not asserted until May 2, 1988—a year after the litigation commenced. It is conceded by the Smiths that the first notification received by New Jersey Realty that there was an adverse claim being asserted against the Smith title was on April 20, 1988, despite the fact that the Smiths had known of Costagliolas claim since February 11, 1987.

New Jersey Realty denies any liability under its title policy based on paragraph 8 of the Scope and Conditions and the failure of the Smiths to give it timely notice of the claim. In the alternative it argues that, if liable, that liability is limited to $6,500—the face amount of the policy. The Smiths seek reimbursement of counsel fees paid to their private attorney as well as $7,613.50 for the Lord survey. New Jersey Realty does not

---

[2]The settlement terms are not before the court but I assume that they include purchase of the requisite strip of land from the Smiths.

dispute the reasonableness of the survey bill. The claim for attorney's fees covers services 1) in defending the Smiths' title; 2) in prosecuting the Smiths' trespass claim against Costagliola and 3) in bringing this claim against New Jersey Realty. Entitlement to those fees is the issue before the court—not their amount.

■ Under the terms of its policy, New Jersey Realty was obligated to defend the Smith title. It relies on the Smiths' failure to give notice of the Costagliola claim to relieve it of that liability. Based on existing law and the facts of this case it may not do so.

■ In order to succeed, the defense of an insurance company based upon late notice must be accompanied by "appreciable harm" to its position. Absent "appreciable harm" it cannot avoid its responsibility. *Cooper v. Government Employees Ins. Co., Inc.*, 51 *N.J.* 86, 94–95 (1968); *Solvents Recovery v. Midland Ins.*, 218 *N.J.Super.* 49, 54 (App.Div.1987); *Morales v. National Grange Mutual Ins. Co.*, 176 *N.J.Super.* 347, 351–357 (Law Div.1980). As those cases hold, the burden of proving "appreciable harm" rests with the insurance company. Here New Jersey Realty can demonstrate no appreciable harm. The defense by private counsel accomplished all that a defense by the title company could have—a completely successful result for the insured. Had the title company conducted the defense, it would have had to obtain a new survey defensible by the surveyor who made it. The appointment of the boundary line Commission by the Court made that a necessary element of proof. New Jersey Realty can point to no issue which it would have raised had it conducted the defense not raised by the private attorney. It argues that it was deprived of an opportunity to negotiate a settlement of the Costagliola claim. That simply begs the issue. The primary duty of a title company is to defend the title of its insured. Costagliola needed *land* for a successful commercial development—not money. Therefore, paying money to the Costagliolas to have them abandon their

claim to the land in dispute was not a realistic settlement option.

It is the law that "a title Insurer has three related duties under a title policy: (1) to indemnify the loss upon payment of damages; (2) to cure the title defects if feasible; and (3) to defend the insured in a judicial attack on its title." *Enright v. Lubow*, 202 *N.J.Super.* 58, 73 (App.Div.1985), on motion for reconsideration, 215 *N.J.Super.* 306 (App.Div.1987). As noted, its prime duty is to vindicate the title. If there is a question as to the extent of the land title insured, the company must defend. If there is a lien not excepted in the policy, it must pay. If it is unsuccessful in the defense and the insured loses lands as a result, it must pay him the value of the land lost. When the title company must pay—either a lienor for the amount of its lien or the insured for the value of the lost land—it need pay no more than the amount set forth in its policy.

There is no justification for the position taken in this matter by New Jersey Realty, *viz.*, that it could abandon the defense by simply paying $6,500 to the insured. The obligation to defend is what the insured bargained for. Only if the defense fails or (as in the case of a lien overlooked in a title search) is useless, does the amount of the policy limit the insurer's monetary liability if the title proves to be flawed; it has no relationship to the cost of a legitimate defense—especially one that is successful. Paragraphs 1 and 9 of the Scope and Conditions of the policy make that dichotomy clear. See *Lumbermen's v. United Services Automobile Ass'n*, 218 *N.J. Super.* 492, 497 (App.Div.1987); *Danek v. Hommer*, 28 *N.J.Super.* 68, 79 (App.Div.1953), aff'd o.b., 15 *N.J.* 573 (1954).

Since, as noted, the title company may not disclaim its obligation to defend (based on lack of notice) and since it contributed nothing to the actual (and successful) defense, it would be unjustly enriched were it not required to reimburse the Smiths

for their legitimate expenses of litigation. There is no suggestion by New Jersey Realty that the cost of the Lord survey was not such a legitimate expense.

In order to evaluate the claim for counsel fees, it is necessary to determine what "the duty to defend" encompasses. In *McMinn v. Damurjian*, 105 *N.J.Super.* 132, 141 (Ch. Div.1969), it was held that the duty is not only to defend from a claim but to affirmatively prosecute an action against a trespass. That was the situation here. Not only had the Costagliola's claimed the disputed land but they had taken possession of it. A successful defense required not only a declaratory judgment but removal of the offensive trespass. New Jersey Realty thus must reimburse the Smiths for reasonable counsel fees incurred both for the defense and in prosecuting the trespass claim. *Gerhardt v. Continental Ins. Co.*, 48 *N.J.* 291, 300 (1966); *Guarantee Ins. Co. v. Saltman*, 217 *N.J.Super.* 604, 610 (App.Div.1987).

Pursuant to *R.* 4:42–9(a)(6) the title company must also reimburse the Smiths for reasonable counsel fees in connection with the prosecution of their third party action. *Guarantee Ins. Co. v. Saltman*, 217 *N.J.Super.* at 612; *Summonte v. First American Title Ins. Co.*, 180 *N.J.Super.* 605, 619 (Ch.Div.1981), aff'd o.b., 184 *N.J.Super.* 96 (App.Div.1981), certif. den., 89 *N.J.* 418 (1982).

Therefore, the third party plaintiffs are entitled to judgment against New Jersey Realty for the surveyor's cost of $7,613.50 together with reasonable counsel fees as outlined above. If the parties are unable to agree on those fees within 15 days either party may advise the court. A hearing will be set to fix the amount.

Mr. Massell shall submit the appropriate judgment within 10 days under *R.* 4:42–1(a).