**ORITANI SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Defendant.**

**Civ. A. No. 89–5355.**

United States District Court,
D. New Jersey.

Oct. 1, 1990.

Andrew Fede, Contant, Schuber, Scherby & Atkins, Hackensack, N.J., for plaintiff.

James M. Mulvaney, McElroy, Deutsch & Mulvaney, Morristown, N.J., for defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

### I. *Introduction*

This is a declaratory judgment action in which plaintiff, Oritani Savings & Loan Corporation, ("Oritani"), seeks a ruling that defendant, Fidelity & Deposit Company of Maryland, ("Fidelity"), is obligated to indemnify it under a Savings and Loan Blanket Bond. Presently before the Court is a motion by Fidelity for reconsideration of this Court's decision rendered on June 28, 1990 and order filed on July 9, 1990,

(the "opinion and order").[1] Previously, Fidelity moved for summary judgment arguing that plaintiff's complaint should be dismissed, because, as a matter of law, no coverage is afforded under the bond. In the opinion and order, this Court denied Fidelity's motion and held that Oritani is entitled to coverage subject to any additional defenses that might later be asserted by Fidelity, such as non-compliance with the contract provisions. In response to Fidelity's motion for reconsideration, Oritani has cross-moved for leave to amend its complaint and for summary judgment in its favor.

## II. *Fidelity's Motion for Reconsideration*

■ "Rule 12I of the General Rules of this court requires a party moving for reconsideration to set forth concisely 'the matters or controlling decisions which [that party] believes the Court has overlooked.' " *Juzwin v. Amtorg Trading Corp.*, 718 F.Supp. 1233, 1234 (D.N.J.1989); *see also Innovation Data Proc. v. Intern. Business Machines*, 603 F.Supp. 646, 647 (D.N. J.1984) (matter required reconsideration in light of intervening United States Supreme Court decision on the same subject matter). A motion for reconsideration is improper when it is used "to ask the Court to rethink what is had already thought through— rightly or wrongly." *Above the Belt v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983). Each step of the litigation should build upon the last and, in the absence of newly discovered, non-cumulative

evidence, the parties should not be permitted to reargue previous rulings made in the case. *Johnson v. Tp. of Bensalem*, 609 F.Supp. 1340, 1342 n. 1 (E.D.Pa.1985).

Fidelity asserts three grounds in support of its motion for reconsideration: (1) that a fair reading of the blanket bond precludes coverage; (2) that the court erred in deciding as matter of law that coverage is afforded, because a question of fact exists as to whether Oritani was a sophisticated purchaser; and (3) that the court erred in finding that a question of fact exists as to whether coverage is afforded under Section (A) of the blanket bond.

■ I reject Fidelity's first argument for reconsideration, because Fidelity has not satisfied the Rule 12 I standard. Fidelity has pointed to no controlling authorities which it claims this Court has overlooked in interpreting the blanket bond. This is understandable in light of the fact that Fidelity previously asserted, in connection with its summary judgment motion, that there were no controlling decisions on the issues before the Court.[2]

■ Likewise, Fidelity has pointed to no other "matter" which it claims the court has overlooked. The only matter to which Fidelity refers is an affidavit by Ray Britt, an employee of Fidelity from October, 1949 to April, 1987. Mr. Britt states that he participated in drafting the standard form of the blanket bond which is the subject of these proceedings. However, this Court did not and could not have "overlooked" this affidavit, as it was not submitted in

---

1. This opinion is to be published at 741 F.Supp. 515. That opinion may be consulted for the relevant background to this case which need not be repeated here.

2. Fidelity argues that the Court erred in consulting the legal definition of the word "presence," and that only the ordinary meaning of the word controls. However, no "controlling" authorities have been presented by Fidelity for the proposition that it is error for a court to refer to the legal definition of a term in interpreting an insurance contract. *See* Defendant's Memorandum of Law in Support of Reargument, ("Db."), at 11–13. As I indicated in my previous opinion, the late Judge Whipple has referred to the *Blacks Law Dictionary* meaning of a term in interpreting an insurance contract. *See Mid-*

*land Bank & Trust Co. v. Fid. & Deposit Co. of Md.*, 442 F.Supp. 960, 970 (D.N.J.1977). Moreover, Fidelity's arguments lose all force when it is realized that the "ordinary" meaning of the word "present," as quoted by Fidelity, does not compel the conclusion that there is no coverage. Fidelity quotes *Websters Dictionary* as stating that "present" means, *inter alia*, "being ... at hand, in attendance, opposed to absent...." *Db.* at 13. Clearly, one who is on the telephone is "at hand and in attendance," and is for all practical purposes more "present" than "absent." Hence, the "ordinary" meaning of the word "present" is ambiguous when applied in the present circumstances and therefore, even if only *Websters Dictionary* was consulted, my previous decision would remain the same.

connection with the previous motion, although Fidelity certainly *could have* submitted it. This is not newly discovered evidence such as would warrant reconsideration. This Court is not required to take into account belated evidentiary submissions on a motion for summary judgment. *Compare Lujan v. Nat'l Wildlife Fed.,* —— U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (district court did not abuse its discretion in declining to consider untimely affidavits submitted after arguments were heard on a motion for summary judgment). Moreover, the subjective intent of a person drafting a contract is not, by any means, determinative as to the meaning of the contract especially where, as here, the contract is one of adhesion. *See Allen v. Metropolitan Life Ins. Co.,* 44 N.J. 294, 305, 208 A.2d 638 (1965). This principle is so well-settled it does not require further citation of authority.

I also reject Fidelity's second argument that this Court erred in deciding as a matter of law that there is coverage under the blanket bond. Fidelity asserts that this Court overlooked that a question of fact may exist as to whether Oritani was a "sophisticated purchaser." Fidelity relies upon *Werner Indus. Inc. v. First State Ins. Co.,* 112 N.J. 30, 548 A.2d 188 (1988), for the proposition that the sophistication of the insured must always be considered. However, Fidelity's reliance upon *Werner* for this proposition is misplaced. The insurance policy before the court in *Werner* involved an *unambiguous* policy of insurance, (*see* 112 N.J. at 38–9, 548 A.2d 188), whereas I have found that the language of the insurance policy in this case is ambiguous. According to the Third Circuit, the

rule that ambiguities are resolved against the insured is applicable in cases involving blanket bonds issued to banks. *See Fidelity & Deposit Co. of Md. v. Hudson United Bank,* 653 F.2d 766, 772 n. 8 (3d Cir.1981).[3]

Beyond this, Fidelity has come forward with no evidence to create a factual issue on the question of whether Oritani was a sophisticated purchaser. Mr. Charles M. Lindner, Jr., the president of plaintiff Oritani, has submitted an affidavit stating that "the Bond in question was not negotiated by the plaintiff as one would negotiate a contract. Instead, the Bond was presented to us just as any ordinary contract of insurance would be presented—on a take it or leave it basis." *See* Affidavit of Charles H. Lindner, Jr., August 2, 1990, ("Lindner Aff."), ¶ 2, p. 2. Fidelity has presented no record evidence to controvert this sworn statement or to support its position that Oritani was sophisticated. While Fidelity asserts that it has not conducted any discovery on the issue, this contention is unavailing. The pretrial scheduling order states that discovery shall remain open only through July 31, 1990, and that no discovery shall be engaged in after that date except upon good cause shown. *See* amended pretrial order, filed May 2, 1990, ¶ 1.[4] Fidelity certainly has had an adequate *opportunity* to conduct discovery on this issue but has failed to come forward with a factual question regarding same. Thus, even if I were required to consider Oritani's sophistication, a finding of coverage would nevertheless be appropriate.

Finally, in support of its reconsideration motion, Fidelity asserts a third ar-

---

**3.** Notably, even though the *Werner* Court opined that the unambiguous language of the contract in that case did *not* provide coverage, the Court did not enter judgment in favor of the insurer. Rather, the Court remanded the case for a determination as to whether, despite the unambiguous language, the insured had an expectation of coverage. *See Werner,* 112 N.J. at 39, 548 A.2d 188. Thus, it is clear that the inquiry called for by *Werner* is not to be applied in cases involving ambiguous insurance policies, (because ambiguities are resolved against the insurer.) On the contrary, the case requires inquiry into the insured's intent only where the

language of the contract dictates a conclusion that there is no coverage.

**4.** Good cause does not exist such as would warrant extension of the discovery period. The discovery period obviously cannot be extended whenever a defendant realizes that it would be opportune to explore a new defense. This is apparently the case here. Defendant's previous legal defenses have proven unsuccessful, and thus, it comes forward with the new issue of whether or not Oritani was sophisticated without having conducted discovery on the question.

gument, namely, that the Court erred in finding that a question of fact exists on whether coverage is afforded under Section (A) of the blanket bond. Fidelity asserts that this Court should not have relied upon the case of *Nat'l Newark & Essex Bank v. Am. Ins. Co.*, 76 N.J. 64, 385 A.2d 1216 (1978), in interpreting that section of the bond.[5] Fidelity points out that the language of the bond at issue in this case differs from the language of the bond at issue in *Nat'l Newark*. In particular, the bond in this case defines the phrase "dishonest or fraudulent acts" to mean "*only* dishonest or fraudulent acts committed by such employee with the *manifest intent* (a) to cause the Insured to sustain such loss, and (b) to obtain financial benefit for the Employee or for any other person or organization...." *See Db.* at 28 (emphasis supplied).[6]

Both parties have presented a number of novel, legal arguments supporting their respective positions regarding the impact of the bond's definition of "dishonest or fraudulent acts" upon the applicability of *Nat'l Newark*. However, there is, apparently, no controlling authority to guide my decision on this issue. In light of the difficulty of the issue, the absence of any controlling authorities, and the fact that it is wholly unnecessary for me to decide it, (since I have already decided that there is coverage under Section (B)), I decline to rule on this issue at this time. *Compare Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 203 (3d Cir.1990) (deeming it prudent to defer resolution of an important and difficult question which is not necessary for the court to resolve).

Accordingly, for all the foregoing reasons, I deny Fidelity's motion for reconsideration.

---

**5.** Fidelity also argues that this court erred, because no claims were asserted under Section (A). This argument is addressed *infra*, at Section III.

**6.** In contrast, in *Nat'l Newark*, the bond simply stated that it provided coverage for "Loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed alone or in collusion with

### III. *Oritani's Cross-motion for Leave to Amend the Complaint*

Oritani has moved for leave to amend its complaint in order to unambiguously state its claim under Section (A) of the bond. In its complaint, Oritani refers to Section (A) of the bond, (*see* complaint, ¶ 2); it specifically alleges that Fidelity denied coverage under *that section* of the bond, (*id.*, ¶ 7); and it then generally demands coverage under the insurance contract *as a whole*, (*see* addendum clause, at p. 5), without reference to a particular provision. In light of these allegations, Fidelity was put on sufficient notice that coverage would be demanded under Section (A) of the bond. Rule 8 merely requires that the pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P.* 8(a). *See also Rose v. Bartle*, 871 F.2d 331, 355 (3d Cir.1989) ("[u]nder the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish each element of the cause of action").

Thus, the amendment Oritani seeks is unnecessary. Oritani has already placed Fidelity on sufficient notice that it asserts claims under Section (A) of the bond. Nonetheless, I will grant Oritani leave to amend so that it may more specifically state its position. In the absence of prejudice to the opposing party, leave to amend should be freely given. *Fed.R.Civ.Pro.* 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Deakyne v. Commsrs. of Lewes*, 416 F.2d 290, 300 (3d Cir.1969) (district court should have permitted defendants to amend the pretrial order at trial, because plaintiff could not suffer any prejudice thereby). Since the complaint already spe-

---

others, including loss, through any such act of any of the Employees of Property held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefore." However, as discussed above, the bond in the instant case further defines dishonest or fraudulent acts of an employee.

cifically refers to Section (A) of the bond and generally demands coverage, Fidelity will not be prejudiced by an amendment which more particularly states that a claim is being made under that section.

Accordingly, I will grant Oritani's motion and it will have ten days in which to file an Amended Complaint.

## IV. *Oritani's Cross-motion for Summary Judgment*

For the reasons expressed in my previous opinion (to be reported at 741 F.Supp. 515), I decided that Oritani is entitled to coverage under Section (B) of the bond. At that time, however, I declined to enter summary judgment in favor of Oritani, because Oritani had not moved for such relief and additional defenses may have been asserted by Fidelity. Oritani has now moved for summary judgment asserting that each of the defenses raised in Fidelity's Answer are without merit and that it is entitled to coverage, as well as costs, prejudgment interest and attorneys' fees. Fidelity responds that prejudgment interest and attorneys' fees may not be recovered under the bond. No other opposition has been asserted by Fidelity in response to Oritani's motion.

### A. *Fidelity's Defenses*

Fidelity asserts six affirmative defenses in its Answer: (1) that Oritani's complaint fails to state a claim; (2) that any loss resulted from acts and/or omissions which are not covered by the bond; (3) that the liability of defendant is subject to the deductible set forth in the bond; (4) that Oritani's recovery is subject to an offset by whatever Oritani has received from third-parties; (5) that coverage for Oritani's claim has been excluded under the bond; and (6) that Oritani's claim is barred due to its failure to comply with provision five of the bond.

The first, second and fifth defenses, set forth above, were decided in Oritani's favor as set forth in my previous opinion and warrant no further discussion herein.

Oritani concedes the validity of defenses numbered three and four. Oritani has demonstrated that the amount of the deductible is $25,000.00 and the amount of the offset is $750.00. *See* Lindner Aff., ¶¶ 12, 14. Fidelity has not disputed these figures. Since the parties previously conceded that the total amount of the loss is $172,500.00, and since the deductible and offset amounts are not disputed by Fidelity, Oritani is entitled to judgment in the amount of $146,750.00, unless Fidelity's remaining defense (numbered six) has any merit.

Fidelity's last defense is that Oritani's claim is barred for failure to provide a "proof of loss, duly sworn to, with full particulars," as required by Section 5(b) of the bond. Provision five of the bond provides that:

> (a) At the earliest practicable moment, not to exceed 30 days, after the discovery of loss, the Insured shall give the Underwriter notice thereof.
>
> (b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.

*See* Complaint, filed Oct. 23, 1989, Exhibit A, p. 5.

It is undisputed that notice was given in accordance with provision 5(a), but that a proof of loss has not been furnished in accordance with provision 5(b).

Where a technical requirement in an insurance policy is not strictly met, the New Jersey courts will nevertheless provide coverage, unless the insurer demonstrates that it would suffer appreciable prejudice. *See Solvents Recovery v. Midland Ins.*, 218 N.J.Super. 49, 54, 526 A.2d 1112 (App.Div.1987), *citing Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 94–95, 237 A.2d 870 (1968). Prejudice will not be presumed but must be proved, and the burden of proof is on the insurer. *See Costagliola v. Lawyers Title Ins. Co.*, 234 N.J.Super. 400, 406, 560 A.2d 1285 (Ch. Div.1988); *see also Cooper*, 51 N.J. at 94 & n. 3, 526 A.2d 1112. Fidelity has not created a genuine issue of material fact on the question of whether it suffered *any* prejudice by Oritani's failure to furnish a proof

of loss. Indeed, it appears that interrogatories were propounded upon Fidelity regarding the absence of a proof of loss and any prejudice resulting therefrom, and no evidence of prejudice could be provided. The interrogatories and Fidelity's responses are as follows:

> 20. State in detail the factual basis for your Sixth Affirmative Defense, that the plaintiff's claim is barred by its failure to comply with Section 5 of the Bond, and make specific reference to each subparagraph of Section 5 that you find relevant to your contentions.

> Section 5(b) of the Savings & Loan Blanket Bond No. 5360536–C issued by defendant Fidelity & Deposit and naming plaintiff Oritani as co-insured, requires that the Insured furnish a Proof of Loss, duly sworn to, with full particulars. Plaintiff Oritani has yet to provide defendant Fidelity & Deposit with a Proof of Loss that satisfies the requirements of Section 5(b) of the Bond. As a result, plaintiff Oritani has breached its obligations under the Bond and therefore is barred from recovery.

> 21. *State in detail any appreciable prejudice that you claim you suffered as a result of the facts you state in your answer to Interrogatory 20.*

> *The extent of any appreciable prejudice that defendant Fidelity & Deposit may have suffered as a result of plaintiff's breach of Section 5(b) of the Bond will not be fully known until completion of discovery.*

See Fidelity's answer to Oritani's interrogatories 20 and 21; Andrew Fede Certification, August 15, 1990, Exhibit B (emphasis supplied).

Although the discovery period has ended, Fidelity has not amended this response, nor has it come forward with a genuine issue of material fact as to any appreciable prejudice it may have suffered. Accordingly, I find that Fidelity's Sixth Affirmative Defense is without merit and that Oritani is

entitled to summary judgment in the amount of $146,750.00.

**B. Costs, Prejudgment Interest and Attorneys' Fees**

In addition to requesting coverage for the loss of $146,750.00, Oritani argues that it is entitled to recover its costs, pre-judgment interest, and attorneys' fees.

**(1) Costs**

 Oritani is entitled to its costs, because it is the prevailing party and there is no apparent reason why costs should be denied here. *See Fed.R.Civ.P.* 54(d); *see also Institutionalized Juveniles v. Sec. of Pub. Wel.*, 758 F.2d 897, 926 (3d Cir.1985) ("the denial of costs to the prevailing party is in the nature of a penalty" which should not be imposed absent "some defection on his part in the course of litigation"); *Burroughs v. Hills*, 741 F.2d 1525, 1537 (7th Cir.1984) (Posner, J., dissenting), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985) (recognizing that, in all but exceptional cases, costs are awarded to the prevailing party).

**(2) Prejudgment Interest**

 Fidelity argues that prejudgment interest cannot be awarded, because an award of interest is excluded from coverage under Section 2(t) of the bond. This section excludes coverage for "potential income, including but not limited to interest and dividends, not realized by the Insured."[7] Oritani concedes that it is limited in its recovery to out-of-pocket damages. However, it argues that the cited exclusion has no relevance in a case such as this, involving breach of the insurance contract, because the exclusion merely defines what is included in a "loss" for the purpose of determining what amount of coverage should be *timely paid*. Neither party has cited any caselaw in support of their respective positions. However, I note that the exclusion must be strictly construed. *See Ellmex Const. Co., Inc. v. Republic Ins. Co.*, 202 N.J.Super. 195, 205, 494 A.2d

---

7. *See Defendant's Brief in Reply to Oritani's Opposition to Motion for Rehearing and Defendant's Opposition to Plaintiff's Cross–Motion for Partial Summary Judgment and Leave to Amend, ("DRb."), dated September 10, 1990, Exhibit A, p. 4.

339 (App.Div.1985), *certif. denied,* 103 N.J. 453, 511 A.2d 639 (1986) ("if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is in order"), *citing Butler v. Bonner & Barnewall, Inc.,* 56 N.J. 567, 576, 267 A.2d 527 (1970); *see also Longworth v. Ohio Cas. Group of Ins. Cos.,* 213 N.J.Super. 70, 79, 516 A.2d 287 (Law Div. 1986), *aff'd,* 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988) (same). As long as an insured's interpretation of an exclusionary provision is reasonable, that interpretation should be given effect. *See Del Vecchio v. Old Reliable Fire Ins. Co.,* 132 N.J.Super. 589, 592, 334 A.2d 394 (Law Div.1975).

■ I find that the distinction made by Oritani is reasonable. There is a difference between the interest that accrues, or could have been earned, between the time that a loss is suffered and a claim is paid, and the interest that accrues between the time that a claim is wrongfully denied and recovery is had under the contract. In addition, the "exclusions section" of the blanket bond, relied upon by Fidelity to limit its *liability* for prejudgment interest, begins with the phrase "This bond does not cover...." [8] Hence, it is reasonable to interpret the purpose of the exclusionary section as limiting the bounds of insurance coverage as opposed to limiting the insurer's liability in the event of a lawsuit. There are additional sections in the bond that deal with legal proceedings and limitations of liability (as opposed to limitations on coverage), although no mention is made as to an award of interest in those sections.[9] Oritani does not seek recovery of prejudgment interest on the grounds that it is entitled to such interest under the terms of the blanket bond, but rather, Oritani claims entitlement thereto under general principles regarding the award of prejudgment interest. The reasonableness of the aforementioned distinction, when viewed together with the rule that exclusions must be strictly construed against the insurer, favor an award of prejudgment interest.

■ General principles concerning the award of prejudgment interest also favor such an award in this case. The question of whether prejudgment interest should be awarded on a liquidated claim is generally a matter within the discretion of the trial court, guided by the principles of equity. *Meier v. N.J. Life Ins. Co.,* 101 N.J. 597, 622, 503 A.2d 862 (1986); *Bak-A-Lum Corp. v. Aloca Bldg. Prod.,* 69 N.J. 123, 131, 351 A.2d 349 (1976).[10] Prejudgment interest merely compensates plaintiff for the loss of use of its money. *Rova Farms Resort v. Investors Ins. Co.,* 65 N.J. 474, 506, 323 A.2d 495 (1974) ("[t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question"). To permit defendant to invoke exclusion 2(t) to preclude an award of prejudgment interest would reward defendant for wrongfully denying plaintiff's claim and delaying payment under the bond. At the same time, plaintiff would be denied the benefit for which it contracted, namely, compensation for its covered losses.

Accordingly, I find that principles of equity favor an award of prejudgment interest in this case. *Compare Tobin v. Jersey Shore Bank,* 189 N.J.Super. 411, 415–16, 460 A.2d 195 (App.Div.1983) (awarding prejudgment interest in order to compensate plaintiff for the wrongful detention of a liquidated sum); and *Polito v. Continental Cas. Co.,* 689 F.2d 457, 461–62 (3d Cir.1982) ("New Jersey courts, however, have long followed the doctrine that an insurance company defendant is liable for interest on a claim from the date on which payment was due under the policy"). Plaintiff will be granted interest on its claim of $146,-500.00 running from June 3, 1988, which is the date on which Fidelity received formal notice of plaintiff's claim. *See* Affidavit of Andrew T. Fede, filed June 13, 1990, Exhibit A.

---

**8.** *See DRb.,* Exhibit A, at 4.

**9.** *See DRb.,* Exhibit A, at 5.

**10.** In a diversity action, a claim for pre-judgment interest is governed by the law of the forum. *See Zippertubing Co. v. Teleflex, Inc.,* 757 F.2d 1401, 1414–15 (3d Cir.1985).

### (3) *Attorneys' Fees*

 Oritani seeks to recover attorneys' fees incurred in connection with collection actions brought in Oklahoma and Kansas against the responsible parties, although it does not seek attorneys' fees incurred in connection with this action.[11] Fidelity argues that such fees are "consequential damages" that are foreclosed by exclusion 2(w) of the bond. Exclusion 2(w) states that the bond does not cover "indirect or consequential loss of any nature." Fidelity also argues that consequential damages are otherwise not recoverable under an insurance contract citing to *Wine Imports v. Northbrook Property & Cas. Ins. Co.*, 708 F.Supp. 105 (D.N.J.1989), and *Garden State Community Hosp. v. Watson*, 191 N.J.Super. 225, 227, 465 A.2d 1225 (App.Div.1982).

 Oritani asserts the same argument in connection with exclusion 2(w) as it did with respect to exclusion 2(t), namely, that the exclusion does not apply in litigation but only where a loss is paid. Oritani further argues that normal principles of contract law and damages apply in a case involving a breach of an insurance contract. For this latter proposition, Oritani cites to *Lieberman v. Employers Ins. of Wausau*, 84 N.J. 325, 419 A.2d 417 (1980) ("the general problem of the law is, and should be, to put a plaintiff in as good a position as he would have been had the defendant kept his contract.... This principle would be applicable to Lieberman's claim against Employer's, [his insurer]") (citations omitted).

The issue of whether Oritani should be entitled to reimbursement for the fees it incurred in connection with its collection efforts presents a difficult question. Neither party has cited to any caselaw involving a similar situation, nor have they cited to any cases directly supporting their respective interpretations of exclusion 2(w) of the blanket bond. Fidelity simply points out that Oritani first began its collection efforts and contacted the firms in Oklahoma and Kansas shortly before Fidelity denied coverage. *See* DRb. at 13; *see also* Lindner Aff., Exhibits F, K, Q.

Unlike the prejudgment interest, the collection action fees could have been incurred at any time, either before or after the claim had been paid and/or wrongfully denied. Thus, I find that the distinction previously made by Oritani—between the covered losses that accrue before a claim is paid and the liability that accrues once a claim is wrongfully denied—is not reasonable as applied to the consequential damages exclusion. The amount of the collection action fees have not been exacerbated by Fidelity's denial of coverage. Hence, to the extent the fees incurred in the collection efforts are characterized as consequential damages, exclusion 2(w) should apply to bar recovery. *Compare In re Estate of Lee*, 812 F.2d 253, 257–58 (5th Cir.1987) (upholding policy exclusion which unambiguously barred coverage for consequential damages).[12] The reasonableness of this interpretation is supported by a number of cases which opine that consequential damages are not recoverable in an insurance contract dispute. *See, e.g., Polito*, 689 F.2d

---

**11.** The attorneys' fees incurred by plaintiff in connection with *this action* are not recoverable as damages. *See, e.g., Gerhardt v. Continental Ins. Cos.*, 48 N.J. 291, 300–01, 225 A.2d 328 (1966); *see also Dorofee v. Pennsauken Tp. Planning Bd.*, 187 N.J.Super. 141, 144–45, 453 A.2d 1341 (App.Div.1982). Although New Jersey court rule 4:42–9(a)(6) permits recovery of attorneys' fees in an action "upon a liability or indemnity policy of insurance," and although the rule applies in a federal diversity action, (*see Transamerica Ins. Co. v. Keown*, 451 F.Supp. 397, 404 (D.N.J.1978)), it does not support an award of fees in a direct suit by an insured against its insurer. *See Guarantee Ins. Co. v. Saltman*, 217 N.J.Super. 604, 610–11, 526 A.2d 731 (App.Div.1987). It thus appears that there

is no statutory or contractual basis for an award of fees in this case. Plaintiff has not demanded and is not entitled to sanctions under *Fed.R. Civ.P.* 11. *See Morristown Daily Record, Inc. v. Graphic Comm., Local 8N*, 832 F.2d 31, 32 n. 1 (3d Cir.1987) ("Rule 11 is ... reserved for only exceptional circumstances").

**12.** However, it should be noted that this contractual exclusion would not apply to the extent Oritani has stated a viable claim under Count Two of its complaint. This count alleges a tort claim for breach of the duty of good faith and fair dealing. *See DiSalvatore v. Aetna Cas. and Sur. Co.*, 624 F.Supp. 541, 542–44 (D.N.J.1986).

at 461; *Wine Imports,* 708 F.Supp. at 105 [13]; *cf. Lieberman,* 84 N.J. at 325, 419 A.2d 417; *Royal College Shop v. Northern Ins. Co. of N.Y.,* 895 F.2d 670, 677–680 (10th Cir.1990); *Salamey v. Aetna Cas. & Sur. Co.,* 741 F.2d 874, 876–77 (6th Cir. 1984).

However, it does not necessarily follow that the fees incurred in the collection actions cannot be recovered. Such relief is only barred to the extent the fees are characterized as "consequential damages." For the reasons set forth below, I find that these damages are not "consequential damages" but are part of plaintiff's losses flowing generally and directly from defendant's breach of contract.

Oritani asserts that the fees were incurred in an attempt to minimize its losses. *See* Lindner Aff., ¶ 18. The bond contemplates, once coverage has been provided, that the insured shall assign its rights and causes of action against any third persons to the insurer. The insurer then becomes subrogated to the insured's rights against third persons and may recover any amounts in set-off. *See* DRb., Exhibit A, Section 7, at p. 5.[14] Here, Fidelity has willingly accepted a set-off as to the amounts recovered by Oritani in its collection efforts. Had Fidelity provided coverage to Oritani, Fidelity would have incurred its own fees in seeking to collect against the third parties, (unless, of course, it chose to forego that opportunity). Fidelity has not questioned the reasonableness

of Oritani's efforts in this regard or the reasonableness of the costs incurred. It merely argues that the fees constitute "consequential damages" which are excluded from coverage. However, had the contract been performed as promised, Fidelity would have incurred these fees, not Oritani, and thus, the fees constitute general damages.

■ This finding is also supported by general principles concerning mitigation of damages. It is hornbook law that reasonable costs incurred by a plaintiff in an attempt to mitigate its losses are recoverable as a traditional element of damages:

> plaintiff is entitled to recover for expenditures reasonably made in an effort to avoid or minimize damages caused by the defendant's conduct. Such a recovery is appropriate even though the expenditures do not succeed in their goal, provided they were reasonable at the time.

*Dobbs,* LAW OF REMEDIES, § 3.7, at 187 (West 1973). *See also S.J. Groves & Sons Co. v. Warner Co.,* 576 F.2d 524, 528 (3d Cir.1978) (a party is entitled to recover expenses incurred in mitigation of damages and "it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective").

■ Limitations on special damages do not apply where the expenses in question

---

**13.** It is true, as plaintiff has pointed out, that each of the cases cited by Judge Politan in *Wine Imports* deal only with the issue of punitive and not consequential damages. *See Ellmex Const. Co., Inc. v. Republic Ins. Co.,* 202 N.J.Super. 195, 207–08, 494 A.2d 339 (App.Div.1985), *certif. denied,* 103 N.J. 453, 511 A.2d 639 (1986) (declining to award punitive damages, because "punitive damages are not available in contract actions"); *Meier v. New Jersey Life Ins. Co.,* 195 N.J.Super. 478, 489, 480 A.2d 919 (App.Div. 1984), *aff'd,* 101 N.J. 597, 503 A.2d 862 (1986) (no punitive damages may be recovered in a breach of contract action); *see also Pierzga v. Ohio Casualty Group of Ins. Cos.,* 208 N.J.Super. 40, 44–45, 504 A.2d 1200 (App.Div.1986), *certif. denied,* 104 N.J. 399, 517 A.2d 402 (1986) (plaintiff failed to show that his case "f[e]ll within the special relationship exception to the general rule prohibiting the award of punitive damages in contract cases"); *Kubiak v. Allstate Ins. Co.,* 198 N.J.Super. 115, 119–120, 486 A.2d 879 (App.

Div.1984), *certif. denied,* 101 N.J. 290, 501 A.2d 952 (1985) (plaintiff's ability to recover interest and counsel fees sufficiently deters wrongful denial of insurance claims so that a new tort action for bad faith denial of insurance benefits need not be judicially created); *Milcarek v. Nationwide Ins. Co.,* 190 N.J.Super. 358, 364, 463 A.2d 950 (App.Div.1983) ("[w]e do not think defendant owed a fiduciary duty to plaintiff in this type of situation for purposes of falling within the special relationship exception to the general rule prohibiting the award of punitive damages in contract cases"). However, I merely refer to *Wine Imports* as support for the reasonableness of Fidelity's interpretation of exclusion 2(w).

**14.** Mr. Lindner (Oritani's president) asserts that "defendant's breach caused the plaintiff to have to attempt to collect the loss, a task that the defendant should be required to do under the Bond." *See* Lindner Aff., ¶ 13.

were reasonably incurred in an attempt to minimize general [15] losses:

> In many situations courts are reluctant to grant special damages. If the item of special damages claimed, however, can be asserted as an expense necessary to minimize damages, the item will be recoverable. *See Coleman v. Garrison,* 281 A.2d 616 (Del.Super.1971), where the plaintiff alleged she had sought sterilization from defendant, who had performed a tubal litigation, but that the plaintiff had become pregnant anyway. She sought, among other items of damage, the cost of another sterilization procedure. The court indicated that if this would minimize damages by a reasonable cost, the cost of a future operation would be recoverable.

*Dobbs,* at 186 & note 12.

Indeed, the basic distinction between general and special damages is that:

> Special damages include items of loss that are more or less peculiar to the particular plaintiff and would not be expected to occur regularly to other plaintiffs in similar circumstances. General damages, on the other hand, are damages that courts believe 'generally' flow from the kind of substantive wrong done by the defendant.

*Dobbs, supra,* at 138.

Since plaintiffs are expected and often are said to have a "duty" to mitigate damages, (*see Groves,* 576 F.2d at 528 n. 5), costs incurred in carrying out this "duty" can be expected to occur regularly and in every case. In particular, this case involves coverage for losses incurred by reason of false pretenses committed on the insured's premises. In every such situation, it is reasonable to expect that efforts will be made in an attempt to recoup the losses incurred by the false pretenses from the persons committing them. Certainly, had plaintiff's efforts been successful and had the full amount of the loss been recovered, Fidelity would have asserted that it is

entitled to a set-off in the full amount. Plaintiff should not be penalized for attempting to recoup its losses from those ultimately responsible, especially since the costs it incurred would in all likelihood have been incurred by Fidelity had it performed the contract as contemplated, and especially since Fidelity has willingly accepted the benefits of Oritani's efforts in the form of a set-off. Thus, the fees incurred by Oritani in the collection actions should not be characterized as "consequential damages" but as general damages flowing directly from defendant's breach of contract. *Compare Dorofee v. Pennsauken Tp. Planning Bd.,* 187 N.J.Super. 141, 144–45, 453 A.2d 1341 (App.Div.1982) (attorneys' fees incurred in bringing an action against a third party are recoverable as a traditional element of damages); *see also Burd v. Sussex Mutual Ins. Co.,* 56 N.J. 383, 394, 267 A.2d 7 (1970), and *Gerhardt v. Continental Ins. Cos.,* 48 N.J. 291, 300, 225 A.2d 328 (1966) (holding that, where an insurer wrongfully denies coverage such that the insured is required to defend a third-party action, the insured is entitled to recover counsel fees "as a traditional element of damage").

Accordingly, I find that the exclusion precluding recovery of consequential damages does not bar plaintiff's claims for the costs it incurred in mitigating its losses in this case. Since no issue has been raised concerning the reasonableness of Oritani's collection actions and the costs incurred therewith, Oritani is entitled to recover the fees it incurred in the amount of $16,088.37. *See* Affidavit of Andrew T. Fede, August 15, 1990, ¶ 4. However, plaintiff is not entitled to the attorneys' fees incurred in connection with this case.

## V. *Conclusion*

For the foregoing reasons, Fidelity's motion for reconsideration of this Court's decision delivered from the bench on June 28,

---

**15.** In this respect, had Oritani's efforts been directed toward minimizing consequential damages and not its losses under the contract, then the bar on consequential damages may apply to

preclude recovery. However, Oritani's collection actions were designed to recover the losses for which coverage was sought.

1990 and filed July 6, 1990 [16] is hereby denied. For the reasons stated above, as well as for the reasons expressed in my previous opinion, Oritani's cross-motions for leave to amend and for summary judgment are granted. Judgment shall be entered in favor of Oritani in the amount of $146,750.00, plus costs, interest running from June 3, 1988, and attorneys' fees incurred in connection with the collection actions brought in Oklahoma and Kansas in the amount of $16,088.37. Oritani is not entitled to attorneys' fees incurred in connection with the instant case. Counsel for Oritani shall submit an Order in conformance with this opinion.

16. As I indicated above, (*see* note 1), this opinion is to be reported at 741 F.Supp. 515.