189 N.J. Super. 411 (1983)
460 A.2d 195
IRVING TOBIN, PLAINTIFF-RESPONDENT,
v.
JERSEY SHORE BANK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 12, 1983.
Decided May 9, 1983.
*412 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Aaron, Aaron and Rosen, attorneys for appellant (Barth F. Aaron of counsel and on the brief).
Gluck & Tobin, attorneys for respondent (James V. Fiore of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*413 Defendant Jersey Shore Bank (bank) appeals from a judgment of the Law Division that awarded plaintiff Irving Tobin (Tobin) damages in the sum of $24,648 together with interest at the prevailing prime rate for the period from February 9, 1980 to April 28, 1982 for the unlawful conversion of funds from an account maintained in his name "in trust for Pernfish, Inc." The trial judge held that in the circumstances here present the bank did not have a right of set-off against this account even though it was comprised of funds to which its debtor, Pernfish, Inc., was equitably entitled.[1]
We are entirely satisfied from our study of the record that the judgment of the trial court is based on findings of fact that are adequately supported by evidence and that, with the single exception relating to the amount of prejudgment interest awarded discussed hereinafter, all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(A) and (E). Accordingly, that portion of the judgment awarding damages to Tobin is affirmed substantially for the reasons expressed by Judge Brody in his oral opinion of April 27, 1982.[2]
*414 We turn therefore to the bank's claim that the trial judge abused his discretion by awarding prejudgment interest at the prime rate.
The record reveals that Tobin calculated the interest on $24,648.64 from February 9, 1980 to April 28, 1982, using the daily Citibank prime rate but without compounding, at $9,565.48. This sum was added to the judgment. The prime rate during this period ranged from 11.1% to 21.5%. The bank, in support of its motion to amend the judgment by reducing the interest awarded, submitted an affidavit to show its gross rate of return on interest-earning assets in 1981 was 12.51%, and its net rate of return was 6.56%. The bank represented that FDIC regulations force it to keep some assets on nonincome-producing reserve, and to lend some money at less than prevailing interest rates.
It is clear that in a case of this kind, the trial court is vested with broad discretion to allow prejudgment interest in accordance with equitable principles. See, e.g., Manning Engineering, Inc. v. Hudson Cty. Park Comm'n, 71 N.J. 145, 159 (1976), vacated on other grounds 74 N.J. 113 (1977); Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 131 (1976); Corallo v. Essex Cty. Welfare Bd., 140 N.J. Super. 414, 417 (App.Div. 1976). In Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134, 154-155 (App.Div. 1960), certif. den. 34 N.J. 66 (1961), we emphasized that "interest does not run as a matter of right on a liquidated demand; rather the trial judge is given broad discretion to allow interest in accordance with the principles of equity."
Here the bank does not challenge the propriety of awarding prejudgment interest. It simply contends that the rate of interest allowed was excessive. Thus, the issue is whether *415 prejudgment interest should be awarded (1) at the rate the creditor, Tobin, would have had to pay to borrow the amount of money wrongfully detained by the debtor bank (i.e., the prime lending rate); (2) at the rate actually received by the debtor while wrongfully in possession of the money (here about 6.5%) or (3) at the rate the creditor could have received had the money been turned over to him on his demand (in this case, the passbook savings rate). The answer depends on an understanding of the nature and purpose of prejudgment interest.
The nature of interest was discussed extensively in Consolidated Police, etc., Pension Fund Comm'n v. Passaic, 23 N.J. 645 (1957). There, the Supreme Court emphasized that interest is a form of damages to compensate the creditor for the wrongful detention of money, explaining:
It is fundamental in our law that "interest is no part of a debt unless so stipulated in the contract; that, usually, it is of statutory origin, and is awarded as damages for the detention of a debt." Warren Bros. Co. v. Hartford Accident & Indemnity Co., 102 N.J.L. 616 (E. & A. 1926), Parker, J. See North Hudson R. Co. v. Booraem, 28 N.J. Eq. 593 (E. & A. 1877). And interest may be penal in its nature. Town of Belvidere v. Warren R.R. Co., 34 N.J.L. 193 (Sup.Ct. 1870), Beasley, C.J., dismissed on a procedural ground, 35 N.J.L. 584 (E. & A. 1871); In re Edge's Will, 115 N.J. Eq. 408 (E. & A. 1934); Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943), affirmed 135 N.J. Eq. 244 (E. & A. 1944). "Interest" is an "exaction for past due obligations and in essence is a penalty or in the nature of a penalty." Burlington County v. Martin, 128 N.J.L. 203 (Sup.Ct. 1942), affirmed 129 N.J.L. 92 (E. & A. 1942). Interest does not inhere in a tax as a legal incident. City of Camden v. Allen, 26 N.J.L. 398 (Sup.Ct. 1857). "Interest when allowed is in contemplation of law, damages for the illegal detention of a legitimate claim or indebtedness." Fidelity Mutual Life Insurance Co. v. Wilkes Barre & Hazelton R. Co., 98 N.J.L. 507 (E. & A. 1923). It is the "computation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention, * * *." Hiatt v. Brown [Brown v. Hiatts], 15 Wall. 177, 21 L.Ed. 128 (1873). In equity, interest has been allowed "either by way of damages for the detention of a fund, or by way of profit earned or advantage attained." Stout v. Sutphen, 132 N.J. Eq. 583 (Ch. 1943); Brown v. Home Development Co., 129 N.J. Eq. 172 (Ch. 1941). Chancery considers the equities of the case. Town of Kearny v. New Jersey Suburban Water Co., 110 N.J. Eq. 214 (Ch. 1932).
"Interest" is not a common-law inheritance. It was denounced by the Mosaic law and by the later ecclesiastical law; and it was rejected by the courts in keeping with the philosophy of the classical and medieval economists from the time of Aristotle that money was but a medium of exchange, inherently barren and nonproductive. 47 C.J.S., Interest, § 2; Am.Jur., Interest, section 3.

*416 37 Henry VIII, c. 9 was the first English statute to sanction interest; the rate was set at 10% per annum. Judicial opinion as to the meaning of this and later statutes was unsettled until Lord Ellenborough laid it down that interest ought to be allowed only where there was a contract for the payment of money on a day certain, as on bills of exchange and promissory notes and other mercantile securities; where there had been an express promise to pay interest; where from the usage of trade or the course of dealing between the parties it was fairly inferable that such was their intention; or where it could be proved that the money had been used and interest actually made. Calton v. Bragg, 15 East. 223, 104 Eng.Repr. 828, 14 Eng.Rul.Cas. 541 (1812). See Cook v. Fowler, L.R. 7, H.L. 27, 14 Eng.Rul.Cas. 546 (1874); Higgins v. Sargent, 2 B. & C. 349; also Selleck v. French, 1 Conn. 32 (Sup.Ct.Err. 1814); White v. Miller, 78 N.Y. 393 (Ct. App. 1879); Rensselaer Glass Factory v. Reid, 5 Cow., N.Y., 587 (Sup.Ct. 1825). The rule was broadened by subsequent legislation which is of no concern here, except to show that the regulation of interest in England was essentially a statutory process. See Webster v. British Empire Mutual Life Insurance Co., 15 Ch.D. 169 (1879).
And in this country interest is generally of statutory origin. Ordinarily, interest is not due as "compensation for the use of money unless by agreement." Daniels v. Briggs, 279 Mass. 87, 180 N.E. 717 (Sup.Jud.Ct. 1932). "Interest is allowed either as damages for the wrongful retention of money or personal property, or in accord with a contract for its payment. * * * The law imposes a duty to pay interest from the time payment of a principal is due, or from the time of its wrongful detention. Such payment is in its essence damages for failure to pay the principal at the time agreed upon. [at 651-653]
In Busik v. Levine, 63 N.J. 351 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973), the court observed:
Interest is not punitive, Wilentz v. Hendrickson, 135 N.J. Eq. 244, 255-256 (E. & A. 1944); here it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed. [at 358]
Here, Tobin was entitled to prejudgment interest as "damages," "compensation" or "indemnification" for the wrongful detention of his funds by the bank. Generally, the measure of damages to the creditor will be the cost to him of borrowing the amount of money wrongfully withheld by the debtor. In most cases that will be the prime lending rate. The specific fund here, however, was not money that Tobin had an unconditional right to use. Had the bank not wrongfully set off against the Pernfish, Inc. account, the money would have remained in the passbook savings account at the applicable rate of interest. Tobin had no right to withdraw the money and derive greater *417 income from it, except in accordance with the terms of the Pernfish mortgage note. Therefore, Tobin's damages were only the passbook interest rate and the trial court mistakenly exercised its discretion by awarding interest at the prime rate.
Accordingly, the portion of the judgment that awarded prejudgment interest at the prevailing prime rate is reversed, and the judgment is modified to provide for prejudgment interest at the passbook rate prevailing during the period from February 9, 1980 to April 28, 1982. Except as so modified, the judgment of the Law Division is affirmed and the matter is remanded to the trial court to recompute prejudgment interest in accordance with the views expressed herein. We do not retain jurisdiction.
NOTES
[1] The debtor, Pernfish, Inc., filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. However, neither it nor its attorneys in the bankruptcy proceeding were made a party to or appeared in the matter in the trial court or in this court.
[2] The pivotal issue involved in this matter is resolved by statute with regard to accounts opened after May 28, 1980, N.J.S.A. 17:16I-13, which became effective on May 28, 1980, provides:

Without qualifying any other right to setoff or lien and subject to any contractual provision, if a party to a multiple-party account is indebted to a financial institution, the financial institution has a right to setoff against the account in which the party has or had immediately before his death a present right of withdrawal. The amount of the account subject to setoff is that proportion to which the debtor is, or was immediately before his death, beneficially entitled, and in the absence of proof of net contributions, to an equal share with all parties having present rights of withdrawal. [L. 1979, c. 491, § 13]
This section, which is taken from § 6-113 of the Uniform Probate Code, see 8 Uniform Laws Annotated 568 (1972), did not apply to this account, since it was opened on July 13, 1979.