737 A.2d 696 (1999)
325 N.J. Super. 27
Gino BENEVENGA, Al Major and Boietes, Inc., a Corporation of the State of New Jersey, t/a The Bayshore Club, Plaintiffs-Respondents/Cross-Appellants,
v.
Dominic DIGREGORIO, Intervening Plaintiff,
v.
Security Indemnity Insurance Company, a Corporation of the State of New Jersey, Dining Car Agency, a Corporation of the State of New Jersey and Speciality Insurance Agency, a Corporation of the State of New Jersey, Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1999.
Decided October 6, 1999.
*697 Douglas M. Calhoun, Spring Lake Heights, for defendants-appellants/cross-respondents Security Indemnity Insurance Company and Specialty Insurance Agency, Inc. (Calhoun & Tice, attorneys; Mr. Calhoun, of counsel and on the brief).
Michael F. Chazkel, Brunswick, for plaintiffs-respondents/cross-appellants (Chazkel & Associates, attorneys; Mr. Chazkel and Thomas A. Chaseman, on the brief).
*698 Before Judges KLEINER, PAUL G. LEVY and CARCHMAN.
The opinion of the court was delivered by PAUL G. LEVY, J.A.D.
In 1991, plaintiffs purchased a waterfront restaurant in Union Beach for $250,000 ($225,000 for restaurant; $25,000 for liquor license). The restaurant was built partly on land and partly on pilings. During a severe wind and rain storm in December 1992, the back part of the restaurant and its supporting pilings collapsed, and the business was totally destroyed. Shortly before the storm, plaintiffs had purchased a special multi-peril insurance policy from defendant, Security Indemnity Insurance Company (Security), insuring the building for $150,000, business personal property for $50,000 and loss of business income up to $24,000. The policy was obtained through defendant Dining Car Agency (DCA), and although the policy specifically excluded any loss or damage caused by water, "driven by wind or not," DCA did not procure a separate flood insurance policy for plaintiffs.
Plaintiffs sued Security to compel payment for its losses under the policy and sued DCA for negligence in failing to obtain the appropriate type of coverage. Prior to trial, DCA settled with plaintiffs for $175,000. At trial, the jury found Security liable to plaintiffs for $279,000 (consisting of $172,000 for damage to the building, $83,000 for contents damages and $24,000 for business interruption). The trial judge molded the verdict to conform to the limits of liability under the policy, yielding a total award of $224,000. Additionally, defendants' motion to setoff the amount of the settlement with DCA was denied, and the judge awarded pre-judgment interest calculated at the rates set forth in R. 4:42-11(b).
On appeal, defendants contend the pretrial settlement with DCA should have been setoff against the judgment and also that the trial judge erred in excluding certain evidence they offered. Plaintiffs cross-appeal, contending that the amount of interest awarded was insufficient and should not have been calculated pursuant to R. 4:42-11(b). We affirm each decision by the trial judge.

I.
Security claims it is entitled to a pro tanto credit of $175,000 against the $224,000 verdict to prevent a double recovery. Its claim is that the $175,000 constitutes "other coverage" for which the policy requires a deduction, and is considered mitigation of damages inuring to Security's benefit. We reject these arguments because the DCA settlement was unrelated to the damages sustained by plaintiffs for an insured event.
Plaintiff sued DCA for "failure to properly advise", acting "contrary to the provisions of applicable statutes concerning the conduct of insurance agents and brokers," "failure ... to obtain proper insurance," and violations of the Consumer Fraud Act. In particular "plaintiffs den[ied] that the loss sustained was excluded under the policy of insurance, [but] if, in fact, it is determined that the loss sustained was, in fact, excluded, then there was a failure on the part of [DCA] to properly advise the plaintiffs or properly secure insurance to cover the ... property." All of plaintiffs' claims against DCA arose out of damages completely unrelated to any loss insured by Security, and would be incurred only if Security was found not liable under the insurance contract.
Security relies on Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 531 A.2d 717 (1987) and Childs v. New Jersey Mfrs. Ins. Co. 108 N.J. 506, 531 A.2d 723 (1987), but those cases are factually inapplicable. Here there is no joint tortfeasor and there is no apportionment of liability between two insureds. A jury found that the damage caused to plaintiffs' property and business was the result of wind and thus was not excluded, making SSI liable *699 under the insurance contract. The claims for which plaintiffs settled with DCA were not for the same damages or the same cause. Rather, they are based on alleged negligence, breach of contractual obligation and fraud in the procurement of an insurance policy.
For the same reasons, plaintiff did not interfere with Security's rights of subrogation by reaching a settlement with DCA. Security claims that plaintiffs are not entitled to recover because they violated the terms of the insurance contract, which stated, in part:
If any person or organization to or for whom we make payment under this coverage part has right to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing to impair them.
The right to subrogation is a derivative one and inures "only the rights of the insured against the tortfeasor subject to defenses of the wrongdoer against the insured." State Farm Mutual Auto. Ins. Co. v. Licensed Beverage Ins. Exchange, 146 N.J. 1, 8, 679 A.2d 620 (1996) (quoting Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 560-61, 428 A.2d 1254 (1981)). Here, any right given away by plaintiffs to DCA was either completely unconnected to Security's right of subrogation or existed only in the event that Security was not liable.
Finally, Security argues that plaintiffs had a duty to mitigate against its payout and thus it is entitled to a set-off against the settlement amount. Again, this argument is specious because plaintiffs' settlement with DCA was not a payment from a third party for the damages sustained by plaintiffs as a result of the storm. DCA was not a co-insurer for weather damage to plaintiffs' business. Plaintiffs sued DCA for breach of contract, negligence and fraud, none of which formed the basis for plaintiffs' claim against their Security policy.

II.
Security argues that the trial judge committed reversible error by excluding from evidence the DCA settlement, a conversation between plaintiffs and their insurance agent, and a video tape of the storm.
N.J.R.E. 403 specifically allows a judge, in his or her discretion, to exclude otherwise admissible evidence under specified circumstances. These decisions are reviewed under the abuse of discretion standard. State v. Erazo, 126 N.J. 112, 131, 594 A.2d 232 (1991). "Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453, 715 A.2d 228 (1998).
First, Security argues that the settlement between plaintiffs and DCA should have been permitted as rebutting plaintiffs testimony that they were certain that wind damage destroyed their business. The trial judge excluded this evidence because he found it had little or no probative value and a high potential for prejudice. This was not an abuse of discretion. "[Such] evidence should have been excluded because it had little or no probative value with respect to [defendant's] responsibility for the accident and yet had an inherent capacity to unduly influence the jury." Wyatt v. Wyatt, 217 N.J.Super. 580, 587, 526 A.2d 719 (App.Div.1987).
Security claims the settlement impeaches plaintiffs' testimony that the damage to their business was caused by wind. To the contrary, there is nothing unusual about a plaintiff maintaining multiple, and even mutually exclusive, theories. In this particular case, the complaint against DCA states that plaintiffs believed the damage to their business was caused by wind ("plaintiffs deny that the loss sustained was excluded under the policy...."). It is that complaint from which the settlement *700 was reached. We agree that the settlement lacked any probative value.
Security next argues that the court improperly excluded a taped conversation between plaintiffs and their insurance agent where plaintiffs allegedly claim the damage was caused by a flood. The record reveals that the judge did not make such a ruling. He said that he had to review the transcript or recording of the conversation before he could rule, but Security never offered the evidence thereafter.
Finally, Security argues that the court erred by excluding a video tape of the storm. However, the tape did not depict the part of the storm affecting the bay in Union Beach. Accordingly, the judge excluded the tape because its probative value was substantially outweighed by it potential for prejudice. Since the storm caused both wind and water damage and because the video was not specific to the site of plaintiffs' business, the judge's ruling that the proffered evidence lacked probative value was not an abuse of discretion.

III.
Plaintiffs cross-appeal the amount of the prejudgment interest award. Initially, Security argues that the trial judge should not have granted prejudgment interest at all, but we disagree. Prejudgment interest in non-tort actions is not a matter of right but one based on equitable principles. See Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 131, 351 A.2d 349 (1976). Where a coverage dispute involves the applicability of an exclusion, rather than the amount of a claim, the equities favor the claimant in the award of prejudgment interest. Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J.Super. 195, 211, 494 A.2d 339 (App. Div.), certif. denied 103 N.J. 453, 511 A.2d 639 (1986).
The amount of the award was calculated using the rate of return of the State of New Jersey Cash Management Fund, as used in tort actions pursuant to R. 4:42-11. Tobin v. Jersey Shore Bank, 189 N.J.Super. 411, 460 A.2d 195 (App.Div. 1983), has been cited by each party. In that case, various formulae were explored to determine the rate of prejudgment interest to be paid by a bank that had wrongfully converted funds from a trust account. The Tobin court considered the rate the creditor would have had to pay to borrow the amount in question (the prime rate), the rate actually received by the bank while it wrongfully possessed the funds, and the rate the creditor could have earned if the money had not been converted (the passbook savings rate).
There is a service maintained by A.M. Best that reports the rate of return by insurance companies on their investments and on their overall profitability. Plaintiffs maintain they were entitled to the same rate of return that Security earned on its funds, but calculated as the after tax rate of return on its investments and underwriting, that is, its overall profitability. Security also looks to Tobin as a basis for calculating what it may owe, but it urges a rate in accord with its statutory limit of investing in only the safest investments. N.J.S.A. 17:24-1. Thus, Security contends that we should use the yield on invested assets as reported by A.M. Best.
If the equities of the matter were unusual, a trial judge might look to sources like A.M. Best for guidance in setting the appropriate rate for an award of interest. But lacking unusual circumstances, we conclude that the rate of return earned by the State Treasurer contemplated by R. 4:42-11(a)(ii) is the standard to which trial judges should adhere. Judge Feldman did just that in this case, and his determination does not amount to an abuse of discretion.
We affirm the trial judge's ruling on both the appeal and cross-appeal.