**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3257-15T4

IN THE MATTER OF RICHARD C.
WILLIAMS, JR.

_____

Submitted April 23, 2018 — Decided June 27, 2018

Before Judges Ostrer and Rose.

On appeal from the New Jersey Civil Service
Commission, CSC Docket No. 2011-1335.

Blaney & Karavan, PC, attorneys for appellant
(Frank Guaracini, III, on the brief).

Levin Pisetzner Levin, attorneys for
respondent (Joseph A. Levin, on the brief).

PER CURIAM

This matter returns to us after a remand to the Civil Service

Commission ("Commission") "for a de novo hearing and initial

decision" before a different administrative law judge ("ALJ"),

following the disqualification of the first ALJ because of a

conflict of interest. In re Richard C. Williams, Jr., No. A-0837-

11 (App. Div. Aug. 6, 2013) (slip op. at 11), certif. denied, 217

N.J. 53 (2014). At issue is the City of Atlantic City's removal

of Richard C. Williams, Jr. from his firefighter position pursuant to departmental charges, including conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6). On remand, another ALJ conducted a hearing and, unlike the first ALJ, reversed the City's termination of Williams' employment. The City appeals from the Commission's final decision, adopting the ALJ's decision, which denied admission of witness testimony adduced at the hearing before the first ALJ. We affirm.

I.

We incorporate by reference the facts and procedural history set forth in the second ALJ's December 21, 2015 initial decision. In sum, the charges against Williams stem from allegations that he exposed himself and ejaculated in front of a group of females during an unscheduled tour of the firehouse when he was on duty. The group was comprised of C.W. her sister, T.P., and two friends, D.N. and A.S.[1] C.W. also claimed Williams improperly allowed her and A.S. to wear fire gear during the tour. C.W., T.P., and D.N. testified at the hearing before the first ALJ.

Following remand, five years after the incident occurred, the City filed a motion to admit into evidence the prior testimony of

_____

[1] C.W. and D.N. were adults at the time of the incident, but T.P. and A.S. were sixteen years old. We use initials to protect their privacy.

C.W., T.P., and D.N., claiming they were unavailable, pursuant to N.J.R.E. 804. Williams opposed the motion on several grounds, including the ALJ's need to assess the witnesses' credibility through "live-testimony." On the first day of the hearing, the City produced testimony from an assistant solicitor regarding his attempts to contact the witnesses. The judge denied the motion.

Pertinent to this appeal,[2] the solicitor acknowledged he did not seek police assistance to locate D.N. Rather, he attempted to find D.N. through social media. The solicitor sent correspondence to D.N. via certified and regular mail advising that "her appearance [in court] may be required." He also attempted to hand-deliver the letter without success. Eventually, the solicitor contacted D.N.'s mother who indicated that D.N. was in Maryland, but was "unavailable because she just had a surgical procedure." Telephonic attempts to contact the Maryland motor vehicle administration were unsuccessful. Although he contacted "various courts in the [S]tate of Maryland" the solicitor did not request any record checks, nor contact the prison system. The solicitor did not retain a locator service.

---

[2] C.W. and T.P. eventually appeared on the second day of the hearing, but there was only enough time for C.W. to testify. The City's motion was, therefore, rendered moot as to C.W.

A-3257-15T4

Although T.P. appeared at the second day of the hearing with C.W., time did not permit her testimony. T.P. did not return to court on February 6, 2015, the third and final day of the hearing. The solicitor contacted the mother of T.P. and C.W. who advised that both of her daughters were moving to Georgia. Although the solicitor did not serve T.P. with a new subpoena for the February hearing, he had informed her that the initial subpoena "was a continuing subpoena." The ALJ denied the City's renewed request to admit the transcripts and the hearing proceeded. The City called C.W. as a witness. On the third day of the hearing, Williams testified on his own behalf, along with multiple lay and character witnesses.

According to Williams, at some point during the firehouse tour, C.W. asked if she could try on gear, and started dancing around and "wanted to do a dance with a pole." Williams told C.W. that she could not do so, but she asked, "[Y]ou wouldn't pay to see us dance?" Williams then ended the tour and escorted the four women from the firehouse.

C.W. testified at the hearing and gave a vastly different version of the events. She claimed C.W. permitted her and A.W. to try on the firefighters' equipment, but instructed them not to take photographs "because they can get in trouble." C.W. asked her friend to take a photograph of her only wearing a bra with

firefighter's suspenders. C.W. further claimed that Williams explicitly asked whether anyone would "give him a blowjob. . . . [and] pulled out his penis." D.N. was "playing with him . . . to make his penis hard" and he ejaculated. Williams kissed D.N.'s breasts and gave D.N. twenty dollars.

In her written decision, the second ALJ determined C.W. was not credible based on her "attitude and lack of candor on the witness stand," which the ALJ found "troubling." Moreover, the ALJ observed various inconsistencies in C.W.'s testimony. In particular,

> In her initial report, C.W. s[t]ated that she and the other young women were dancing, showing their breasts, giving oral sex, and getting money from three firefighters involved. In her later statements and testimony, C.W. stated that there was no oral sex, that there was no touching, that only one firefighter was involved, and that only D.N. received money. The sexual activity allegedly occurred through pants that had been unzipped. Then the story changed to occurring with the pants unbuttoned and taken down. Moreover, C.W. waited two months before making any accusations, and then told [a City police aide] whom she did not know when she was attending municipal court.

Conversely, the ALJ found credible the testimony of Williams and his several character witnesses. Accordingly, the ALJ dismissed the violations of departmental rules and regulations, and reinstated Williams to his position as a City firefighter. Her

5

initial decision was later deemed adopted as the Commission's final agency decision, pursuant to N.J.S.A. 52:14B10(c), due to a lack of quorum created by vacancies.

The ALJ's decision also detailed her reasons for denying the City's motion. In doing so, she found the City "failed to show that [T.P. and D.N.] were unavailable or were otherwise not subject to process to compel them to testify at the hearing." This appeal followed.

Although the City moved to admit the prior testimony pursuant to N.J.R.E. 804, it primarily argues for the first time on appeal, that the ALJ abused her discretion by failing to admit the testimony under the evidentiary provisions contained in the Administrative Code, i.e., N.J.A.C. 1:1-15.1 and N.J.A.C. 1:1-15.5. In doing so, the City claims the New Jersey Rules of Evidence should not have been applied here. See N.J.A.C. 52:14B-10(a); N.J.A.C. 1:1-15.1(c); N.J.R.E. 101(a)(3). In the alternative, the City renews its argument that the witnesses were, nevertheless, "unavailable" pursuant to N.J.R.E. 804.

## II.

Typically, where an agency issues a final decision, our review is limited. Lavezzi v. State, 219 N.J. 163, 172 (2014). We will not disturb the final determination of an agency unless shown that it was "arbitrary, capricious or unreasonable, or it is not

supported by substantial credible evidence in the record as a whole." Id. at 171 (quoting Prado v. State, 186 N.J. 413, 427 (2006)). That deference extends to decisions relating to employee discipline and punishment, including termination. In re Herrmann, 192 N.J. 19, 28 (2007); see also In re Carter, 191 N.J. 474, 486 (2007).

However, "when the lack of a quorum attributable to vacancies cause[s] the agency inaction [in response to an ALJ's recommendation], the current version of the deemed-adopted statute does not require traditional deferential appellate review of the ALJ's decision." In re Hendrickson, 451 N.J. Super. 262, 266 (App. Div.), certif. granted, 231 N.J. 143 (2017). Instead, we apply the "standard of review for bench trials[,]" where we will affirm an ALJ's factual findings "to the extent they are supported by substantial credible evidence in the record." Id. at 273 (second quotation citing Zaman v. Felton, 219 N.J. 199, 215 (2014)).

Thus, we will "not disturb the factual findings" unless we are "convinced that they are so manifestly unsupported by[,] or inconsistent with[,] the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice[.]" D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (fourth alteration in original) (quoting Seidman v. Clifton Sav. Bank,

<u>S.L.A.</u>, 205 N.J. 150, 169 (2011)). Additionally, we defer to credibility determinations because the judge "'hears the case, sees and observes the witnesses, and hears them testify,' affording [the judge] 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" <u>Gnall v. Gnall</u>, 222 N.J. 414, 428 (2015) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 412 (1998)).

However, "No deference will be accorded to . . . legal conclusions; they will be reviewed de novo." <u>In re Hendrickson</u>, 451 N.J. Super. at 274 (citing <u>Zaman</u>, 219 N.J. at 216). Nevertheless, we give substantial deference to the trial judge's discretion on evidentiary rulings, <u>Benevenga v. Digregorio</u>, 325 N.J. Super. 27, 32 (App. Div. 1999), and "reverse a judgment based on an evidentiary error only if we are convinced that the error 'was clearly capable of producing an unjust result.'" <u>Manata v. Pereira</u>, 436 N.J. Super. 330, 343-44 (App. Div. 2014) (quoting <u>Green v. N.J. Mfrs. Ins. Co.</u>, 160 N.J. 480, 502 (1999)).

As in <u>Hendrickson</u>, the ALJ's decision here was deemed adopted because the Commission, for reasons beyond its control, could not muster a quorum. Applying the bench trial standard of review, we find the second ALJ properly excluded the prior testimony of T.P. and D.N.

Initially, we address the City's newly-minted argument that the ALJ failed to admit the prior testimony pursuant to N.J.A.C. 1:1-15.12, under the plain error standard of review. R. 2:10-2; see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 2:10-2 (2018) (recognizing the applicability of Rule 2:10-2 in administrative appeals). In particular, the City claims the ALJ did make the requisite credibility evaluation in excluding the prior testimony. N.J.A.C. 1:1-15.12(a) provides:

> If there was a previous hearing in the same or related matter which was electronically or stenographically recorded, a party may, <u>unless the judge determines that it is necessary to evaluate credibility</u>, offer the transcript of a witness in lieu of producing the witness at the hearing provided that the witness' testimony was taken under oath, all parties were present at the proceeding and were afforded a full opportunity to cross-examine the witness.
>
> [(emphasis added).]

The City's argument is unpersuasive. The ALJ referenced N.J.A.C. 1:1-15.12 in her written decision, and explicitly cited the credibility issue at the conclusion of the solicitor's testimony recounting his attempts to locate the witnesses. While we acknowledge colloquy between counsel and a judge cannot substitute for the judge's factual findings and legal conclusions, Pardo v. Dominguez, 382 N.J. Super. 489, 492 (App. Div. 2006), there was ample evidence in the record to support the ALJ's

9

determination that it was necessary for her to evaluate the credibility of T.P. and D.N.

For example, T.P.'s statement to the City's police detective contradicted her testimony before the first ALJ. During her interview with the detective, T.P. identified Williams from a photo array and specifically denied that he was involved in any misconduct. However, when she testified at the first hearing, T.P. recanted that statement. By the time she testified, T.P.'s sister C.W. had filed a civil lawsuit against the City and Williams Contrary to the City's claims, D.N.'s prior testimony was inconsistent with C.W.'s version of events. D.N. claimed C.W. offered to perform oral sex on the firefighter, and C.W., alone, walked around the firehouse. Thus, the ALJ rhetorically asked at the conclusion of the solicitor's testimony,

> If they testified one way and then changed their mind and testified another way, how do I know which one is real and which one is [no]t unless I have the opportunity to see them and see how they testify and see how they [a]re exposed on cross-examination? Which is really the heart of our system when . . . credibility is an issue.

Here, the ALJ's decision denying admission of the prior testimony rested on her explicit recognition, on the record at the conclusion of the hearing, that "credibility is really the issue [here]." We thus discern no error, much less plain error, in the

ALJ's evidentiary decision.  Her need to observe and hear T.P. and D.N. testify was both implicitly and explicitly expressed on the record and in her written decision.  Gnall, 222 N.J. at 428.

Nor are we persuaded that the ALJ erred by failing to admit the transcripts pursuant to the Code's "residuum rule" set forth in N.J.A.C. 1:1-15.5(b).  Although the City did not argue admission of the prior testimony on that basis, the ALJ acknowledged the residuum rule in her written decision.  In any event, pursuant to N.J.A.C. 1:1-15.1(c), "All relevant evidence is admissible except as otherwise provided [in the Code]."  Because N.J.A.C. 1:1-15.12 specifically pertains to prior testimony, the residuum rule is not triggered here.

Finally, we agree with the ALJ that neither T.P. nor D.N. was shown to be unavailable within the meaning of N.J.R.E. 804.  The City's argument rests on Rule 804(a)(4)'s catch-all provision, defining "unavailable" to include absence from a hearing due to "death, physical or mental illness or infirmity, or other cause, and the proponent of the statement is unable by process or other reasonable means to procure the declarant's attendance at trial . . . " (emphasis added).  The City argues T.P. and D.N. were unavailable to testify before the second ALJ due to "other cause." Specifically, T.P. refused to comply with her continuing subpoena,

and D.N. could not be located.  The City's claims are belied by the record.

While T.P. may have been under a continuing subpoena pursuant to N.J.A.C. 1:1-11.1(b), the record is devoid of proof that she was, in fact, informed of the February 6, 2015 continuation date of the hearing.  Rather, the solicitor testified that T.P. and C.W. "said . . . they would be available for . . . future hearings." The solicitor attempted to contact T.P. telephonically concerning the February 6 hearing, but never spoke with T.P.  That was the extent of his attempts to produce her for the hearing.  As the ALJ aptly found, T.P. "responded to process at the first scheduled hearing date, and there is no reason to believe that she would not have been available had she been timely and personally served with a notice to attend the hearing in February."

We likewise agree with the ALJ's determination that the City's efforts to locate D.N. were insufficient.  The ALJ found, "Other than a few telephone calls to state agencies, with no written follow-up or request, or the use of a locator service, [the City] gave up on its efforts to locate [D.N.], or to determine whether she would be subject to [the] interstate subpoena process."

We conclude from our review of the record that the ALJ's decision was supported by sufficient credible evidence in the record.  Accordingly, the Commission's decision adopting that

decision was not arbitrary, capricious or unreasonable. We, therefore, discern no basis to alter the Commission's decision. See In Re Young, 202 N.J. 50, 70 (2010).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION