**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1921-23

POLO NORTH COUNTRY
CLUB, INC., a Florida
corporation,

    Plaintiff-Appellant,

v.

ACOWRE, LLC, a Colorado
limited liability company, and
TEN RE ACNJ, LLC, a New
Jersey limited liability company,

    Defendants-Respondents.

_____

Argued October 7, 2025 – Decided December 23, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-4255-20.

Brian J. Molloy argued the cause for appellant (Wilentz, Goldman & Spitzer PA, attorneys; Brian J. Molloy, of counsel and on the briefs).

Michael W. Sabo argued the cause for respondent (Fox Rothschild LLP, attorneys; Jacob S. Perskie, Amanda Moscillo, and Michael W. Sabo, of counsel and on the brief).

PER CURIAM

Polo North Country Club, Inc. sued Acowre, LLC, seeking recovery of annual parking garage fees allegedly owed from the sale of Ocean Casino Resort[1] and its parking garage. Following a bench trial, which limited the final judgment to $8,229, Polo North appeals three trial court orders. First, Polo North contends a protective order incorrectly barred it from obtaining raw parking garage data to determine the number of cars entering the garage each day and whether Acowre underpaid garage fees. Second, Polo North asserts the trial court erred in granting Acowre's motion for summary judgment dismissing its equitable accounting claim. Third, Polo North claims the trial court misinterpreted the parties' agreement for calculating parking garage fees. Based on our review of the parties' arguments, the record, and applicable law, we reverse.

---

[1] Ocean Casino Resort was previously known as Revel Casino and Resort.

I.

In 2017, Polo North entered into an $11 million agreement to sell Ocean Casino and its parking garage to Ten Re ACNJ. Acowre was later assigned Ten Re's rights, obligations, and contractual duties under the agreement.

In August 2020, after resolving a requirement to obtain a casino vendor license to receive its parking garage fees royalties from Acowre under the agreement, Polo North requested payment of outstanding fees due on January 4, 2020, the first date payments were due to Polo North. When payment was not received, Polo North sued Acowre and Ten Re and later amended its complaint to allege breach of contract, equitable accounting, acceleration, common law fraud, and seek reclaiming of property and appointment of a receiver.

In January 2021, Polo North received a check from Acowre for $1,025,580 for the parking garage fees with a letter stating the payment "represents the total parking fees that Polo North earned for 2020."[2] Polo North's counsel's letter response stated:

> The problem is my client cannot cash the check without
> a written understanding that by cashing the check they
> are not waiving any [right] to dispute the amount of the

---

[2] Due to COVID-19 restrictions, Ocean Casino was closed for part of March and all of April, May, and June 2020.

entitlement to 2020 parking fees or to any of the other issues noted in our complaint in Superior Court.

During litigation, Acowre continued to send annual parking garage fees payment to Polo North, based on Acowre's calculations. In forwarding the 2022 payment, Acowre noted the "breakdown of fees on a monthly basis and [included] a spreadsheet for each month as back-up for the calculation."

A. Motion Practice

The parties actively engaged in motion practice regarding discovery and summary judgment. In extending discovery, the motion judge recognized that Polo North's claim "[was] centered on the manner in which the cars are 'counted' by the [d]efendants"; thus, "the parties [need] to address a method of calculation of the payment derived from the parking revenue due to [p]laintiff." The judge reasoned, "an additional period of discovery is necessary for the parties to address a method of calculation of the payment derived from the parking revenue due to [p]laintiff." The judge explained:

> The [c]ourt, at this point in the litigation, finds it is appropriate to limit access to the financial documents and discovery related to the parking garage because this [c]ourt can also find on this record that an expanded access to financial information was clearly not contemplated or incorporated within the subject [p]aragraph by the parties.

4

The fees' calculation centered on interpretation of the agreement's paragraph 14.19 Parking Garage, stating:

> As compensation paid to Seller[3] for selling to Buyer[4] the Parking Garage, in addition to the Purchase Price, Buyer shall pay Seller the following fee for a period of ninety-nine (99) years from the Closing Date, except for Buyer's employees and residents (owners of condominium units and their tenants (but not hotel guests), Buyer's Tenant's employees, all Vendors, State Agency vehicles and Tow Trucks in addition to paying all CAM related expenses for the parking garage: (i) years 1 and 2: $0.00 per car; (ii) years 3 through 6: $1.50 per car; (iii) years 4 through 9: $3.00 per car; and (iv) year 10, and each year thereafter $4.00 per car. Seller shall be entitled to record a Memorandum of Interest in the Public Records of Atlantic County, New Jersey memorializing the ninety-nine (99) year revenue income stream.
>
> [(Emphasis added).]

Polo North subsequently sent defendants a supplemental notice to produce the following items:

> 1. All documents regarding, referring to or relating to the numbers entered into the Spreadsheet forwarded on or about January 22, 2022, attached to Plaintiff's Supplemental Interrogatories to Defendant included with this Notice to Produce. (Hereinafter "Spreadsheet").

---

[3] Polo North.

[4] Ten Re, which subsequently became Acowre.

2. All documents regarding, referring to or relating to any communications forwarded to the State in connection with the payment of the amount identified in the Spreadsheet as "Owed to State."

. . . .

5. All data files including any information regarding, relating to or referring to any of the information used in the formation of the Spreadsheet.

6. All communications regarding any audit performed by the State on the information contained in the Spreadsheet or the data used in compiling the Spreadsheet.

. . . .

12. All footage from any cameras or security footage of cars entering or exiting the parking lot in 2021.

13. All documents, including data files, regarding, referring to or relating to revenue and expenses for the Parking Lot for each of 2019, 2020 and 2021.

In response, Acowre produced approximately 500 pages of discovery, including daily spreadsheets showing car counts from January 1, 2021 to December 31, 2021.

After discovery was extended again, Acowre moved for a protective order, arguing Polo North sought raw data that was outside the scope of permissible discovery. Polo North cross-moved and sought to compel discovery of the raw data regarding the parking garage fees calculation. The trial court, different

6

from the motion court, granted the protective order. Finding Acowre demonstrated good cause for a protective order, the trial court barred Polo North from obtaining raw data from the parking garage's transactions. The trial court reasoned the discovery request would amount "to the [c]ourt entering judgment in favor of [Polo North]," noting Polo North's complaint pursues an "accounting and/or auditing" of Acowre's garage parking lot revenue. The court found the request fell "outside the scope of the permissible discovery set forth by [the motion judge], which was [Acowre's] manner of counting cars." Thus, discovery was limited "to [Acowre's] manner of counting cars as well as access to the garage."

Pertinent to Polo North's appeal, the trial court granted in part Acowre's third summary judgment motion, dismissing with prejudice all but Polo North's breach of contract claim. As to the equitable accounting claim, the court reasoned that because accounting is an equitable relief and monetary damages are at issue here, "a legal remedy is available and there is no [oral or written] agreement between the parties for an equitable accounting, [thus] there is no genuine issue of material fact in dispute."

7

B.  Bench Trial

During a one-day trial, the trial court determined that the issue was whether "[d]efendants breached the contract by not paying [Polo North] for certain categories of cars that utilize the parking garage."  Polo North's Owner Glenn Straub, Ocean Casino's hospitality projects manager Garret Garcia, and hotel accounting manager Korrin Carrieri testified for Polo North.  Defendants' sole witness was Ocean Casino's executive vice-president of operations Frank Ruocco, Jr.  The court found Straub was "the least credible witness" because "[his] memory [was] hampered by the amount of time that had passed since the [agreement] negotiations between the parties began and the time of trial, which was several years."  The court found the other witnesses were credible.

The court determined Acowre did not breach the clear and unambiguous language of the agreement by not paying Polo North for hotel guest vehicles.  The court cited Carrieri's testimony that, based on the parties' agreement:

> If [a] vehicle for someone that is not staying in the hotel uses the parking garage on Monday, then returns and uses the parking garage for the next two days, then the vehicle is charged for all three days and [Polo North] is paid for all three days.  However, if the vehicle [belongs to] a hotel guest, and uses the parking garage for three consecutive days, that vehicle only pays the parking garage fee the first time the hotel guest vehicle exits the parking garage.  [Polo North] is paid one time for that hotel guest vehicle.

A-1921-23

The court therefore held:

> The contract does not provide that [Polo North] will be paid per car per entrance, per car per exit nor per car per day. When the hotel guest exits the parking garage for the first time, [Polo North] is properly paid for the car. When the hotel guest car returns to the parking garage and leaves again later that same day or perhaps the next day, [Polo North] is appropriately not paid as [Polo North] has already been paid for that car. As such, the [c]ourt specifically finds that [Acowre] has not breached the contract for failure to pay [Polo North] for vehicles that are placed in the "hotel guest" category.

The court, however, found that, based on the annual spreadsheets provided by Acowre to compute the parking garage fees owed to Polo North, Acowre breached the contract by not paying Polo North for parked cars in the human resources category for prospective interviewees that were not employees. Defendants stipulated that the spreadsheet used to pay Polo North did not include cars returning to the parking lot who were hotel guests and did not include non-employees who are arriving for interviews. The court entered final judgment totaling $8,229 in Polo North's favor.

The court later denied Polo North's reconsideration motion. The court rejected Polo North's contention, that it did not consider Carrieri's testimony that a hotel guest only pays for each day and not multiple times a day, but made clear that payments for State taxes and Polo North's royalties covering a hotel guest's

9

parked car are only for one stay, not multiple times for one stay. The court determined that, based upon Rule 4:49-2, reconsideration was not appropriate because its decision considered all the trial evidence and was not based on a palpably incorrect or irrational basis.

II.

We first address Polo North's appeal of the protective order barring discovery of the raw data concerning the cars entering the parking garage. Based on our liberal pretrial discovery rules, Trenton Renewable Power, LLC v. Denali Water Solutions, LLC, 470 N.J. Super. 218, 226 (App. Div. 2022), we conclude Acowre did not demonstrate good cause as to why justice requires such an order "to protect a [defendants] . . . from annoyance, embarrassment, oppression, or undue burden or expense," R. 4:10-3.

Polo North contended it needed the raw parking garage data to determine the number of cars that entered the parking garage in light of Carrieri's deposition testimony that Ocean Casino was only compensated for one charge per stay for hotel guests, rather than one charge per car. Further, Carrieri testified that this method of tracking vehicles entering the garage was "approved by the [S]tate," but Ocean Casino's records have not been audited by the State since 2018. However, the protective order improperly shielded raw data that

could determine whether Polo North received the proper amount of royalties' fees.

The raw data is necessary because under the agreement, Polo North is entitled to payment per car entry into the parking garage. The spreadsheets Acowre produced summarized parking records based on Acowre's calculations and did not identify the cars entering the parking garage. The raw data is also relevant because it has a "logical connection" with the disputed parking garage fees. See R. 4:10-2(a) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . including . . . documents, electronically stored information"); Marrero v. Feintuch, 418 N.J. Super. 48, 60 (App. Div. 2011) (internal citation omitted) (finding that relevancy hinges upon "the logical connection between the proffered evidence and a fact in issue"). Our Supreme Court has held that disclosure of raw data is permissible to compute damages. See, e.g., Starr v. Berry, 25 N.J. 573, 585 (1958) ("The report itself was furnished to defendants, but plaintiffs would not reveal the underlying data. Such data must be furnished if the parties are to be prepared in advance of trial to meet the other's proof."). The trial court erred in failing to consider the relevance of the raw data and did not determine whether the discovery request was burdensome. See R. 4:10-3.

The trial court erred in reasoning that granting the raw data request was "essentially [tantamount] to the [c]ourt entering judgment in favor of [Polo North]," and noting Polo North seeks an "accounting and/or auditing" of Acowre's parking lot revenues. Rather, the raw data would allow Polo North to corroborate or discredit Acowre's calculations of the number of cars entering the garage to determine its royalties. Accounting or auditing has no bearing on the scope of discovery.

Moreover, we agree with Polo North, and in turn reject Acowre's position, that providing Polo North the raw data is consistent with the motion judge's determination to extend discovery because "the parties [need] to address a method of calculation of the payment derived from the parking revenue due to [Polo North]."[5] The raw data allows for this. A protective order should not have been granted.

---

[5] Neither party argued that the motion judge's decision constitutes a law of the case. Although we point to the judge's ruling, we need not determine if it is the law of the case. See Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)) ("[A] legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.").

## III.

We next address the summary judgment dismissal of Polo North's equitable accounting claim. Applying the same standard as the trial court, examining the record in the light most favorable to Polo North—the opponent of the summary judgment motion, Townsend v. Pierre, 221 N.J. 36, 59 (2015)—we conclude the equitable accounting claim is legally viable and should not have been dismissed.

Equitable accounting may be the proper recourse upon a court finding: "first, the existence of a fiduciary of trust relation; second, the complicated nature of character of the account; and third, the need [for] discovery." Borough of Kenilworth v. Graceland Mem. Park Ass'n, 124 N.J. Eq. 35, 37 (Ch. Div. 1938)). Over forty years later, our Supreme Court clarified in Onderdonk v. Presbyterian Homes of New Jersey, 85 N.J. 171, 181, n.4 (1981), that where the plaintiffs "do not seek periodic formal court approved accountings," "it is not necessary to consider the three traditional grounds upon which equity would grant relief." The Court recognized that even where there is no agreement for an accounting, such "covenants . . . may be implied to carry out the intent or purpose of the contract [which] do not modify or alter its terms, but are in furtherance of what was intended." Id. at 181.

A-1921-23

A corollary to an implied covenant of good faith and fair dealing is that "it is certainly reasonable to imply that neither party to a contract shall injure the right of the other to receive the fruits of the agreement," id. at 182, thus conditions may be implied "on grounds of fairness and justice," 8 Corbin on Contracts § 32.1 (rev. ed. 2025)); see also Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965) (quoting Wood v. Lucy, Lady Duff-Gordon, 118 N.E. 214, 214 (Ct. App. 1917)) ("The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal . . . . A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed."). Logic supports an accounting where "the party without access to the information has justifiably, and by invitation, reposed its trust in the other party and is dependent upon the good faith of that party." Onderdonk, 85 N.J. at 187. Clearly, the parking garage records are exclusively in Acowre's possession, and an accounting is necessary for Polo North to evaluate Acowre's compliance with their agreement. Thus, the trial court was incorrect in citing the parties' lack of an equitable accounting agreement as a basis to dismiss the equitable accounting claim.

The trial court also misinterpreted Onderdonk in finding the equitable accounting claim was not viable because Acowre submitted annual accountings

14

to Polo North and the casino industry is in a "heavily regulated business." Although the defendants in <u>Onderdonk</u> were likewise subject to state laws governing non-profit organizations and provided monthly statements to the plaintiffs, these factors were immaterial to the Court's ruling that the plaintiffs' retirement community residents were entitled to an equitable accounting of the monthly operating costs of the retirement community operated by the defendant. <u>Id.</u> at 175, 178-79. As in <u>Onderdonk</u>, Acowre's parking garage fees obligations to Polo North has nothing to do with Acowre's state tax and casino regulatory requirements; they are solely based on the parties' agreement, not Acowre's tax obligations. And as noted, the spreadsheets provided by Acowre do not allow Polo North to determine whether it has been paid the full royalties under the agreement. Thus, the trial court's reliance on the State's acceptance of Acowre's system of accounting and the information Acowre provided to Polo North is not a proper basis to grant summary judgment.

IV.

Lastly, we address Polo North's contention that the trial court erred in interpreting the parties' agreement when denying Polo North's motion to reconsider final judgment. The court determined "[Acowre] pays [Polo North] [p]laintiff once, 'per car' for a hotel guest's use of the subject parking garage,

15

[which] . . . [does] not breach the clear and unambiguous language of the [agreement]." Polo North contends the agreement facially provides it is entitled to royalty "payment[s] for every car that enters the parking garage," drawing no distinction between cars for hotel guests versus daily guests.

Based upon our de novo review of the agreement, we agree with Polo North. Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) ("Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes."); see N.J. Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440, 453 (App. Div. 2019), aff'd o.b., 245 N.J. 104 (2021) (holding that because "the issue raised on appeal involves the interpretation of a contract and the application of case law to the facts of the case, we review the trial court's decision de novo.")

The agreement is plain and clear in setting forth the parking garage fees Acowre must pay Polo North; thus, we must enforce those terms as written by giving them "their plain, ordinary meaning." C.L. v. Div. of Med. Assistance & Health Serv., 473 N.J. Super. 591, 599 (App. Div. 2022) (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008)). Section 14.19 of the agreement simply states that Polo North must be paid: "(i) years 1 and 2: $0.00 per car; (ii) years 3 through 6: $1.50 per car; (iii) years 4 through 9: $3.00 per car; and (iv) year

16

10, and each year thereafter $4.00 per car." (Emphasis added). Contrary to the trial court and Acowre's interpretation, the agreement specifically exempts cars driven by Ocean Casino's employees, condominium owners and tenants, and tenants' employees, state agency employees and tow trucks, which Polo North does not receive payment for. Notably, the agreement explicitly provides that hotel guests are not exempt, stating: "Buyer shall pay Seller the following fee for a period of ninety-nine (99) years from the Closing Date, except for Buyer's employees and residents (owners of condominium units and their tenants (but not hotel guests)." (Emphasis added). As such, Polo North is entitled to compensation for hotel guest per car entry—not per stay.

Indeed, the trial court initially wrote in its decision that "the 'per car' language of the [agreement] [was] clear and unambiguous and, as such [Polo North] should get paid each time a vehicle enters the parking garage, regardless of the number of times the car entered and regardless of when the car entered." This, however, is later contradicted in the decision where the court states it enforced the terms "as written," finding "[Acowre] pays [Polo North] once, 'per car' for a hotel guest's use of the subject parking garage, which the [c]ourt found did not breach the clear and unambiguous language of the contract." These two findings are not consistent.

As Carrieri conceded in her deposition, the agreement does not carve out exceptions for hotel guests or state that Polo North is to be paid "per car, per stay." Polo North correctly points out that the trial court's interpretation of the agreement defies logic as it would require "limiting the royalty to one payment per car in perpetuity," or "[o]nce a [guest's] car enters it never can again be charged." A reasonable reading of the agreement's plain language indicates that Polo North should be paid "per car" upon entry excluding the specified cars exempt from the royalty charge under section 14.19.

In sum, we vacate the final judgment and remand for a new trial. The trial court shall conduct a case management conference within forty-five days to establish, in its sound discretion, deadlines for discovery concerning the raw data showing the number of cars entering the parking garage as set forth in this opinion, dispositive motions, and new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

18

A-1921-23